# Exhibit A

IN THE SUPERIOR COURT OF FORSYTH COUNTY

STATE OF GEORGIA

FILED IN OFFICE

2015 OCT -7  PM 4: 52

GREG G. ALLEN, CLERK
SUPERIOR & STATE COURT
FORSYTH COUNTY, GEORGIA

|  |  |
|---|---|
| COBREY BENNETT & MARYAM | ) |
| | ) |
| BENNETT | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| OCWEN LOAN SERVICING | ) |
| | ) |
| Defendant | |

Civil Action No.: 15CV, 2019-2

DECLARATORY JUDGMENT FOR

PRESCRIPTIVE TITLE OCGA §

44-5-161 & OCGA § 44-5-144 &

EMERGENCY INJUNCTIVE

RELIEF

## MOTION FOR DECLARATORY JUDGMENT FOR PRESCRIPTIVE TITLE & EMERGENCY INJUNCTIVE RELIEF

**COMES** Now The Plaintiffs, Cobrey and Maryam Bennett and moves this court to

grant this Declaratory Judgment for PRESCRIPTIVE TITLE and an Emergency Motion

for Permanent Injunctive relief Against, the Defendants Ocwen Loan Servicing and

Their Counsel Bradley, Arant, Boult, & Cummings, LLP. **We would also like to request**

**an Emergency Hearing**

### JURISDICTION

Forsyth Superior Court, has jurisdiction and the venue is proper because State Court

has jurisdiction in actions to quiet title when there are not tax issues at hand there are no

tax issues in this cause.

1

## PREAMBLE

The Plaintiffs, had a case pending in Superior Court case no. 14CV-0891-02, which was illegally moved to federal court case number 2:15-cv-170, who does not have lawful jurisdiction because they can not handle quiet title actions, and the amount in dispute is less than $75,000.

The Judge (J Clay Fuller) that is overseeing the illegally moved case, denied the Plaintiff's remand request, and the Plaintiffs, have reason to believe they have indulged in improper ex part communication with the Defendants.

Judge J Clay Fuller, threatened us with, sanctions for failure to file a certificate of interested persons, even though it is clear the matter at hand is not properly in the federal court's jurisdiction. Then Judge Fuller, went on to tell the Defendants, to refile their motion for Summary Judgment in its entirety. The Defendants, did not petition the court to correct the record regarding any missing pages. The Plaintiffs, have a copy of everything that was moved from Superior Court to Federal, and we did not see any proof of missing pages.

## 18 U.S.C. § 1517 Obstructing Examination of Financial Institution

Prohibits corruptly obstructing or attempting to obstruct any examination of a financial institution by an agency of the United States with jurisdiction to conduct an examination of such financial institution. Judge Fuller and Judge O'Kelly would not enforce the subpoena we issued to Allquest to show proof that they were indeed a shell company

that Ocwen was using to unjustly enrich themselves from us. We asked why and they never answered. Below is yet one of many reasons, we feel that the Court has been involved in improper ex parte communication.

The Defendants, had previously filed a motion in which they corrected any errors on record, claiming misnumbered pages. Which was filed and corrected before the Judge Fuller issued a ruling, to refile its motion for summary judgment in its entirety. When the defendants, refiled after Judge Fuller issued his order, they had added new papers that had never been filed, which include, an amount in dispute that was not including in any of the previous filing by either party, in an attempt to make it appear as if the federal court is giving them a chance to correct the court record to have the appearance of federal jurisdiction when there is none. See (exhibit)

We will add them so, the Superior Court, can compare them with the current record and make a legal determination of whether or not the Defendants are trying to commit fraud upon the court. The Defendants, moved our cause because they claim it was under federal jurisdiction, because we used TILA as a defense.

If it pleases the Court, we ask that the Court confirms, that the Plaintiffs, did not file an amended complaint and the original complaint listed as 14CV-0891-02 was filed with the Superior Court, using only state statutes, and that no definitive amounts were in dispute, and that the complaint was to quiet title.

## ARGUMENT

The Supreme Court Ruled in Jesinowski v Countrywide, that the only thing a homeowner must do to rescind under a TILA violation is to send notice, the Defendants, have no legal lien on our property, and have not had one since August 9, 2013. The assignee accepts responsibility of any violations of TILA upon assignment.

Assignee's Liability: An assignee is liable for statutory damages for violations by failure to disclosure TILA requirements by its predecessors and its own violation if it fails to respond properly to a rescission notice. Palmer v. Champion Mortg., 465 F.3d 24, 27 (1st Cir. 2006).

**TILA Violation**

TILA was violated, because the amount stated on the truth in lending statement, does not match the amount of our statements from Ocwen. There was nothing to show how this change would effect the terms we agreed to, how long the different payment would last, nor did nothing to correct the error, after given several attempts by the Plaintiffs, to do so. Because TILA was in fact violated, our right of rescission was extended by 3 years.

TILA seeks to assure meaningful disclosure of credit terms and conditions that the consumer will be informed with accurate costs and benefits of their credit transaction, allowing them to shop for the best credit terms available on the market. 15 U.S.C. § 1601(a).

According to our Federal Truth in Lending Disclosure Statement, provided to the

4

CFPB by Ocwen, our monthly payment should have been $ 2013.31, which is not inline with payment statements from Ocwen, which claimed our monthly payment was $1735.46. This is a Material Violation of TILA and is the cause of our right to the extended 3 year rescission period.

## STANDARD OF LAW

Since TILA specifically remedial in nature, its provisions must be strictly construed. A creditor must comply with TILA in all credit transactions and "misleading disclosure is as much a violation of TILA as a failure to disclose at all." Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980). It is not sufficient to attempt to comply with the Act, but rather, creditors are required to strictly comply with all the requirements of the Act. There is no need to show that the consumer was misled or deceived by ambiguous credit terms in order to prevail. Noel v. Fleet Finance, Inc., 971 F. Supp. 1102 (E.D. Mich. 1997).

There was no paperwork to show how or why this change occurred, how long it would last, nor how it would affect the agreed to loan terms since the difference in payment is $277.85 (which just so happens to be the amount Carol the underwriter claimed were for our HUD insurance premium) which could have had substantial differences if accounted for. There were no corrected disclosures accounting for the change. Nor was there one, when we sent notification of rescission, which means our rescission is valid.

5

**Prescriptive Title**

Prescription establishes title under a claim not supported by valid written evidence of title. It requires possession of the property that did not originate fraudulently. Possession must be public, continuous, exclusive, uninterrupted, peaceable, and not merely permissive. Prescriptive title confers ownership in seven years when the claimant possesses flawed written evidence of title or evidence that is invalid for some reason. The phrase "color of title" describes this type of evidence.

The Plaintiffs, have been living in their property for almost 9 years in an open and lawful manner. There is a proven break in the chain of title. Citimortgage, is listed as the owner of our deed in our bankruptcy action, yet in a title search we paid for, as well as the one, that was done by the title insurance company, shows no proof whatsoever of Citimortgage having a legal claim.

So we are entitled to claim prescriptive, for this reason as well as the fact that the original deed of origination was canceled and contained imperfections due to the break of chain by Citi long before the refinance in 2012, and the fact the Plaintiffs, rescinded the refinanced loan due to fraud and violations of TILA. Note,

Ocwen, failed to file for a timely declaratory judgment on this matter and thus have no further claim to our property, because the statute of limitations has long since expired, and upon experation, the note, the lien and the debt, all became null and void as well.

We mailed Ocwen, a demand to void rescind our loan on August 9th 2013 and they are non-compliant. And because they fail to dispute our rescission in the 20 day window to ask the Court to interfere, so they have no recourse. Due to this, we are demanding that the Court enforces Ocwen's compliance.

The conveyed property to the Plaintiffs, by warranty deed was imperfect. Which means anyone after Citimortgage, held imperfect title to the property, making the transaction flawed; and due to the flaw, none of the mortgagors, after Citimortgage held perfect title to our land. Although the deed is flawed, it is considered our by "color of title." Therefore, the Plaintiffs can perfect title after seven years through prescription. (O.C.G.A. § 44-5-164).

## WE ARE DEMANDING THAT THE COURT ACCEPT OUR OFFER OF FELONIES COMMITTED

We would also like this Court to accept our offer of the felony that Ocwen, Mr Faris and Mr Erbry were aware of the crimes being committed against us since 2013 and did nothing to stop it or report it to the proper authorities. Ocwen violated the False Claims Act, by knowingly submitting false information to FHA/HUD to get a government insured loan, for which the Plaintiffs, did not qualify.

Their Counsel has aided them in committing fraud upon us as well as the court. As well as the criminal violations of TILA & RESPA. We would also like Judge Fuller and Judge O' Kelly reported for failing to report the crimes committed against when given

7

more than enough probable cause to do so and for the fact that they did not enforce the

subpoena issued to Allquest, to show that they were being used as a shell company by

Ocwen to illegal try and steal our home. Which is a felony under,

## CONCLUSION

The Plaintiffs, requested a void/rescission of their loan from Ocwen, in August of

2013, pursuant to the Supreme Court's decision, in "Jesinoski v. Countrywide Home

Loans, Inc., 135 S. Ct. 790 - Supreme Court 2015" The Truth in Lending Act gives

borrowers the right to rescind certain **loans** for up to three years after the transaction is

consummated. The clear import of § 1635(a) is that a borrower need only provide

written notice to a lender in order to exercise his right to rescind.

We want the court to enforce the rescission, and make Ocwen, show this change is in

effect, and refund us all of our money from the time of closing to the present with

interest and enjoin them from any further harassment to us and the nuance they continue

to commit against us.

Respectfully Submitted                                        October 6, 2015

   /s/ Cobrey & Maryam Bennett
Proud To Say We're Pro Se
Cobrey & Maryam Bennett
965 Summerfield Dr                          Phone: 678-689-9601
Cumming, GA 30040                           Fax: 770-887-3109
                                            Email: maryamthomas@hotmail.com

The Plaintiffs hereby declares that a copy of this motion will be sent to defense counsels on the same day a copy is mailed to the court.

  /s/  Cobrey & Maryam Bennett                            October 6, 2015

Cobrey and Maryam Bennett
Pro Se Litigants
965 Summerfield Dr
Cumming, GA 30040
Phone: 678-689-9601
Fax: 770-887-3109
Email: maryamthomas@hotmail.com

**Title Search and Proof of Citi's holder in due course status and lack if any record of it on file.**



# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **COBREY BENNETT & MARYAM** | ) | Civil Action No.: 2:15-cv-170 |
| | ) | |
| **BENNETT** | ) | |
| | ) | **PLAINTIFFS' MOTION TO** |
| **Plaintiffs,** | ) | **RECUSAL DUE TO CONFLICT OF** |
| | ) | **INTEREST** |
| **v.** | ) | |
| | ) | |
| **OCWEN LOAN SERVICING** | ) | |
| | ) | |
| **Defendants** | ) | |

**COMES** Now Cobrey & Maryam Bennett and demands an automatic recusal for the following reason: All the causes of action of this cause, are from the Official Code of Georgia. The original jurisdiction of this cause is and has always been under state jurisdiction. The Defendants goal to remove this cause to Federal Court, is blatant abuse of process.

The "Court's" order to have Ocwen "refile its Motion for Summary Judgment in its entirety" is clearly, to benefit the Defendant, Judge O' Kelly, and Judge Fuller. The Defendant's motion contained papers that were never filed with their motion for summary judgment in Superior Court. The Motion itself has 10 extra pages and D.E. 40-1 pages 8,9, 26-29 were added not because they were filed out of order. They never existed before Judge Fuller allowed them to "Refile their Motion for Summary

1

Judgment" to give it the appearance of having federal jurisdiction.

We have reason to believe the Court is helping Ocwen and BABC, to use the civil process to abuse and further victimize us. As well as to cover up their own misdeeds committed in case number 2:13-cv-243. And since we are in the process of filing the following criminal charges for those misdeeds and they were made aware of this, and more crimes have been committed in this cause we will be adding those to the list of crimes we have listed below.

This matter is a clear conflict of interest. Why after having this case sit in Superior Court for over a year would the Defendant remove it to federal court, back to the same judges that mishandled it in the first place?

Judge Fuller & Judge William O' Kelly, will have the following criminal charges pressed against them, along with Keith Anderson, Bradley, Arant, Cummings, Boult, and McCurdy and Chandler: Violation of 18 U.S.C. § 4 Misprison of a Felony, Violation of 18 U.S.C. § 1517 Obstructing Examination of Financial Institution, Violation of 18 U.S.C. § 1519 Destruction, Alteration or Falsification of Records, Violation of 18 U.S. Code § 1506 - Theft or alteration of record or process; Violation of 18 U.S. Code § 1509 - Obstruction of court orders and Abuse of Process.

Both Judges blatantly ignored our lawful request for judicial notice on multiple occasions, we asked the judges to enforce the subpoena we issued to Allquest because Ocwen was using this as an illegal shell company to try and steal from us and the US

government.

Judge fuller stated in his initial R & R that we had cause for conspiracy but stated we did not name the parties to whom they conspired with, and when we tried to add them to the complaint, they would not let us do so.

Judge O' Kelly blatantly threatened us and told us that if we filed anymore cases in their court regarding Ocwen, and our loan, that he would sanction us. Then they sat on our request to enforce the subpoena and when we asked on multiple occasions why they would not enforce it, they would not and still have not answered that question.

Then, Judge Fuller threatened us with sanctions because we had not filed a certificate of interested persons, when he knows that federal court does not have jurisdiction over quiet title actions that don't involve taxes.

Judge Fuller also answered our motions in this case in one to two days because, we have reason to believe they worked in collusion together to with Ocwen, to ensure that we would not get the hearing we requested in State Court, because they know that they violated TILA and we proved it beyond a shadow of a doubt and they are trying to drag out the process, because they don't want to be held accountable for all the harm they have caused our family and so many others.

With Judged Fuller's & O' Kelly's refusal to enforce the lawful subpoena we served on Allquest, they are guilty of obstruction pursuant to 18 U.S.C. § 1517 Obstructing Examination of Financial Institution.

Along with their failure to accept our offer of the felony False Claims Act violations that were committed, and their failure to acknowledge the proof we offered that showed that Ocwen lawfully obtained our funds, but failed to used them in the manner they were intended for, when they failed to pay our homeowners' insurance from our escrow account and it was canceled, is a violation of 18 U.S.C. § 1001 False Statements & 18 U.S.C. § 1010 Department of Housing and Urban Development and Federal Housing Administration transactions.

Finally, they ignored our offer of proof of the various felonies that were committed which is Mispriosn of a felony.

## CONCLUSION

Finally, the original jurisdiction of case number, 14CV-0891-02 was and still is to quiet title, the TILA rescission is only more proof, in a long line of proof as to why our loan was invalid. TILA was not listed as a cause of action, nor did we file to amend our complaint to add it as one. Judge Fuller and Judge O' Kelly, are trained and seasoned officers of court and they are tasked with having the knowledge they claimed we lacked to know that they do not have jurisdiction over this cause and our statement about the TILA Rescission, (not a cause of action) does not change that. And because they threatened us yet again, and then allowed Ocwen, to further abuse the litigation process.

These dishonest Judges have ignored our evidence, admitted their disdain for Pro Se Litigants, twisted the rules and procedures, obstructed the record, retaliated against us

4

with the threat of jail and/or sanctions, dismissed valid claims, denied admission of

evidence prejudicially to favor Ocwen, committed suborn perjury, mischaracterized

pleadings, engaged in ex parte communication with the Defendants, and misapplied the

law. Both judges know darn good and well that the act of theft by conversion, is still a

valid claim even if the stolen property was given back, which is a misapplication of the

law.

When Judges do these things, they are committing crimes it doesn't matter if they are

grand or petty, it doesn't take much to "steer" a case. What criminals wouldn't in a

position in a place of power that allows them to block a proper investigation of their own

crimes? There is not a more sound reason to claim a conflict of interest.

With this being said, All of the orders in this action as well as in case no. 2:13-cv-243

should be vacted.

Respectfully Submitted,                                                October 7, 2015


   _/s/  Cobrey & Maryam Bennett_
Cobrey & Maryam Bennett                          phone: 678-689-9601
965 Summerfield Dr                               email: maryamthomas@hotmail.com
Cumming, GA 30040

## PROOF OF SERVICE

The Plaintiffs hereby declare that the opposing parties will be sent a copy of the above styled motion the same day the Plaintiffs, sends it to the court.


 Cobrey & Maryam Bennett    /s/                    October 7, 2015
Cobrey & Maryam Bennett                            Phone: 678-689-9601
965 Summerfield Dr                                 Fax: 770-887-3109
Cumming, GA 30040                                  email: maryamthomas@hotmail.com

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA GAINESVILLE DIVISION

**COBREY BENNETT, et al.,**

**Plaintiffs,**                                          **CIVIL ACTION FILE NO.:**
                                                        **2:15-CV-170-WCO-JCF**

**v.**                                                   **OBJECTION TO ORDER 39**

**OCWEN LOAN SERVICING, LLC.,**

**Defendant,**

---

**COMES** Now, The Plaintiffs, to Object to Order 39. For the following reasons: We the Plaintiffs, have a copy of everything that was filed with the Superior Court and everything that was filed upon the attempt to remove this case to Federal Court. We would like to know which pages the Court claims are missing and how many are missing. We are also demanding copies of all communication, phone records, etc, between BABC and the Court regarding missing papers.

There was no motion filed by the Defendants, asking to correct the record as they have done previously in this cause. The Plaintiffs, have copies of everything filed in both courts, and have no sign of missing pages. We the Plaintiffs, would also like to know why the Defendants, did not have to ask on the record to correct the record due to the missing information on the record?

## CONCLUSION

We would like to point this out for the record, we were not given the same courtesy as the Defendants, when we did not "File a Certificate of interested persons." We were threatened with sanctions, for failure to file proper the paperwork.

Respectfully Submitted,                    September 29, 2015

_____/s/ Cobrey and Maryam Bennett_____

**Cobrey Bennett & Maryam Bennett**

**965 Summerfield Dr                    Phone: 678-689-9601**

**Cumming, GA 30040                    email: maryamthomas@hotmail.com**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| COBREY BENNETT and MARYAM BENNETT, | ) | |
| | ) | |
| Plaintiffs, | ) | **Civil Action No.: 2:15-cv-170-WCO-JCF** |
| | ) | |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S NOTICE OF RE-FILING ITS
## MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY

Pursuant to the Court's Order (Doc. 39), Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by and through its undersigned counsel, re-files its Motion for Summary Judgment (Doc. 13) in its entirety with all exhibits thereto and statement of undisputed facts, and which was previously filed in the Superior Court of Forsyth County, Georgia, Civil Action No. 14CV-0891-2 on July 14, 2015.

Respectfully submitted this 29th day of September, 2015.

/s/Keith S. Anderson
Keith S. Anderson (GA Bar No. 136246)
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

1

Email: kanderson@babc.com

A. Michelle Canter (GA Bar No. 108097)
4720 Peachtree Industrial Blvd, #106
Norcross, GA 30071
Telephone: (678) 496-2580
Facsimile: (205) 521-8800
Email: mcanter@babc.com
Attorneys for Defendant/Counter-
Plaintiff Ocwen Loan Servicing, LLC

## LR 7.1D CERTIFICATION

I hereby certify that the foregoing was prepared in Times New Roman 14 point as approved by the Court in LR 5.1B.

s/ Keith S. Anderson, Esq.
Keith S. Anderson

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2015, I served a copy of the foregoing via United States Mail, first-class postage prepaid and addressed to her regular mailing address, to the following:

Cobrey and Maryam Bennett
965 Summerfield Drive
Cumming, GA 30040

/s/Keith S. Anderson
Keith S. Anderson

FILED IN OFFICE

IN THE SUPERIOR COURT OF FORSYTH COUNTY 2015 JUL 14 AM 10: 05
STATE OF GEORGIA

GREG G. ALLEN, CLERK
SUPERIOR & STATE COURT
FORSYTH COUNTY, GEORGIA

| | | |
|---|---|---|
| COBREY BENNETT and MARYAM BENNETT, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | Case No. 14CV-0891-2 |
| OCWEN LOAN SERVICING, LLC, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO PLAINTIFFS'
PETITION TO ESTABLISH TITLE AGAINST ALL THE WORLD**

Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), by and through its

undersigned counsel, submits this Motion for Summary Judgment to Plaintiffs' Petition to Quiet

Title pursuant to O.C.G.A. §§ 9-11-56 and 23-3-65. There is a valid and enforceable Security

Deed on the subject property that is not satisfied and all of Plaintiffs' contentions have already

been assessed and dismissed as a matter of law in a previous action. As such, *pro se* Plaintiffs'

Quiet Title Action, and any claim for adverse possesion, is frivolous and due to be denied with

prejudice, Plaintiffs' improper recordings of an "Affidavit of Notice of Revocation of Power of

Attorney and Termination of Attorney in Fact" and "Cancellation of Security Deed as

Reconveyance of Title" are due to be stricken and expunged from the county records, and the

Security Deed recorded on November 30, 2012, as Doc. ID 013281730014, at Book 6493, Page

185-198, is due to be declared in full force and effect.

1

**Facts**

1.    On or about November 19, 2012, Plaintiff Cobrey Bennett executed a promissory note (the "Note") in the amount of $284,900.00 in connection with a mortgage loan transaction. Plaintiff Maryam Bennett is not a borrower or on the Note. On the same date Plaintiffs Cobrey Bennett and Maryan Bennett executed a Security Deed (the "Security Deed") on real property commonly known as 965 Summerfield Drive, Cumming, Georgia (the "Property"). The Security Deed was recorded on November 30, 2012, as Doc. ID 013281730014, at Book 6493, Page 185-198. (Affidavit of Ocwen Representative Crystal Kearse, attached hereto as Attachment 1, hereinafter "Kearse Aff.," ¶ 6).

2.    Ocwen became the loan servicer for the subject loan on December 18, 2012, and is the current loan servicer of the loan. Ocwen is in possession of the original Note. (Kearse Aff., ¶ 7).

3.    On or about September 24, 2013, Plaintiffs, acting *pro se*, commenced an action regarding the Property by filing a Complaint against Defendant in the Superior Court of Forsyth County, Georgia, Case No. 13SC-1473-B. The allegations from that case arose out of the same promissory Note and Security Deed, originated on November 19, 2012, at issue in the instant case. On or about October 22, 2013, Defendant removed that action to the United States District Court for the Northern District of Georgia, Gainesville Division. That matter is styled as *Cobrey Bennett and Maryam Bennett v. Ocwen Loan Servicing, LLC*, Case No. 2:13-cv-00243-WCO-JCF (the "Federal Court action").

4.    The Federal Court action dealt with fifteen claims from Plaintiffs and multiple attempts by Plaintiffs to add claims and add parties. (*See* November 26, 2013, Amended Complaint, attached hereto as Attachment 2).

2

5.      Twelve of the Plaintiffs' fifteen claims were dismissed at the motion to dismiss stage on August 12, 2014, upon the District Court's adoption of the magistrate's Report and Recommendation. (*See* Certified Copy of Report and Recommendation and Order, attached hereto as Attachment 3).   One of the claims specifically rejected and dismissed was Plaintiffs' attempt to amend their complaint and include a claim for Quiet Title under O.C.G.A. § 23-3-60, et seq.   The Court rejected Plaintiffs attempted Quiet Title action for multiple reasons.   (*See* Report and Recommendation, pp. 40 – 42 ("Although Plaintiffs express uncertainty as to the owner of the Security Deed, documentation attached to the original Complaint clearly shows that MERS, as nominee for Mortgage Services and its successors and assigns, possesses the Security Deed and thus holds legal title to the property."); Certified Copy of August 12, 2014, Order).

6.      Plaintiffs attempted multiple times to add claims and parties and compel discovery, but all were rejected. (*See* August 12, 2014, Order; September 2, 2014, Order; March 12, 2015, Order, each attached hereto as Attachments 3 and 4).

7.      In an order following an injunction hearing in the Federal Court action, District Judge O'Kelly remarked that all of Plaintiffs' contentions were "nonsense" and "legally spurious," and found them to be baseless.  (*See* Certified Copy of February 25, 2015, Order, attached hereto as Attachment 5).

8.      All remaining claims were dismissed with prejudice on April 22, 2015, upon the Court's entry of summary judgment in Defendant's favor on Plaintiffs' three remaining claims. (*See* Certified Copies of Report and Recommendation, dated March 12, 2015, and Order adopting the Report and Recommendation and Judgment of Dismissal, dated April 22, 2015, attached hereto as Attachment 6).  In its final order, the Court commented that "Plaintiffs' complaint is one in a long line of disorienting cases that attempts to leverage a poor

3

understanding of the mortgage securitization process into a number of legal "gotchas" to invalidate defendant's ability to collect on the mortgage." *Id.* at pp. 1-2.

9.     Plaintiffs' Motion for Reconsideration was also denied by the Federal Court and found to be frivolous and not brought in good faith.  (*See* Order denying Motion for Relief dated May 27, 2015, attached hereto as Attachment 7).

10.     On or about May 7, 2014, Plaintiffs, acting *pro se*, commenced the instant action by filing a Complaint styled as a "Petition to Establish Title Against All the World" and an accompanying "Motion for Declaratory Judgment & Nuisance" against Defendant in the Superior Court of Forsyth County, Georgia, Case No. 13SC-1473-B. (*See* Compl.).

11.     On or about December 17, 2014, Plaintiffs recorded an "Affidavit of Notice of Revocation of Power of Attorney and Termination of Attorney in Fact" with the clerk of the Superior Court of Forsyth County as Document ID 014455860003 at Book 7221, Page 353-355. This document purported to "revoke, terminate, and rescind all Powers of Attorney" given by the Plaintiffs to the lender.  The execution or recording of this document was not authorized by Ocwen or any party associated with the lender or lender's assigns or nominee. (Kearse Aff., ¶ 9, Exhibit D).

12.     On or about January 13, 2015, Plaintiffs recorded a document entitled "Cancellation of Security Deed as Reconveyance of Title" in the public records of Forsyth County as Document ID 014488100020 at Book 7245, Page 633-652. The execution or recording of this document was not authorized by Ocwen or any party associated with the lender or lender's assigns or nominee.  (Kearse Aff., ¶ 10, Exhibit E).

13.     The Security Deed recorded on November 30, 2012, remains a valid and enforceable security interest.   The Security Deed secures an outstanding mortgage loan

4

obligation. The Bennett loan has not been paid off, and has a current outstanding principal balance of $282,123.01 and a total payoff amount as of May 21, 2015, of $316,401.60. The Bennett loan is currently due for the August 1, 2013, payment. (Kearse Aff., ¶ 8, Exhibit C).

**I.** **There is a valid, unsatisfied Security Deed on the Property and Plaintiffs do not even have standing to bring a quiet title action because the Security Deed has not been satisfied.**

It is abundantly clear that there is a valid and enforceable Security Deed on the Property that was recorded on November 30, 2012, as Doc. ID 013281730014, at Book 6493, Page 185-198. (Kearse Aff., ¶ 6, Exhibit B). The mortgage loan is far from satisfied as there is a significant outstanding amount owed. (Kearse Aff., ¶ 8, Exhibit C). As long as a recorded security deed on the Property exists in the official register of Forsyth County, any quiet title petition with respect to the Property is destined to fail.

Under Georgia law, an action to quiet title may only be brought by one who "holds some current record title or current prescriptive title." *Cunningham v. Gage*, 301 Ga.App. 306, 308(2), 686 S.E.2d 800 (2009); *Dykes Paving & Constr. Co. v. Hawk's Landing Homeowners Assn.*, 282 Ga. 305, 647 S.E.2d 579 (2007). One who possesses only an expectancy or a right to acquire title lacks standing to bring a quiet title action. *Id.*

It is well established that a security deed passes legal title to the grantee, although it leaves an equitable title vested in the grantor, that is, an equitable right of redemption by payment of the debt. *See* O.C.G.A. § 14-44-60 ("The conveyance of real or personal property shall pass the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid"); *Taylor, Bean & Whitaker Mortg. Corp.*, 276 Ga. 848, 851, 583 S.E.2d 844 (2003) (where borrower had not paid off the promissory note she was not entitled to cancellation of the security deed); *McCarter v. Bankers Trust Co.*, 247 Ga.App. 129, 543

S.E.2d 755, 757 (2000) (under § 44-14-60 the borrower had "mere equity of redemption and right of possession of the realty until the secured debt has been satisfied in full" but not legal title); *Tomkus v. Parker*, 236 Ga. 478, 224 S.E.2d 353 (1976);

As there is a valid and unsatisfied security deed on the property the Plaintiffs lack standing to even bring a Quiet Title action. *See Woodberry v. Bank of America*, Civil No. 1:11-cv-3637-TWT, 2012 WL 113658, at *2, (N.D. Ga. Jan. 12, 2012) (borrower who granted lender a security deed lacked standing to seek quiet title under O.C.G.A. § 23-3-61). *Bragg v. Bank of America, N.A.*, 2014 WL 2154190, at *3 (N.D. Ga. May 21, 2014) (dismissing quiet title action by *pro se* plaintiff where plaintiff had not satisfied underlying loan obligations and lacked record title to the property); *Brantley v. U.S. Bank, N.A.*, 2013 WL 5429624, at *5 (N.D. Ga. Sept. 30, 2013) ("quiet title is an equitable remedy, and a plaintiff seeking equitable relief must have clean hands...[i]n the case of mortgages, this requires that the plaintiff seeking to quiet title has paid the loan" and subsequently dismissing complaint where plaintiff was in default on the loan).

Any attack by Plaintiffs on the assignments of the security deed are futile as a matter of law, as it is well established that borrowers do not have standing to contest the validity of assignments. *Montgomery v. Bank of Am.*, 321 Ga. App. 343, 346, 740 S.E.2d 434, 438 (2013) (holding that the borrower lacked standing to contest an assignment); *Puissant v. Bank of Am. Home Loan Servicing, LLP*, 5:12-CV-388 MTT, 2013 WL 6383102 (M.D. Ga. Dec. 5, 2013) (holding that borrowers lacked standing to challenge the assignment because they were not parties to the assignment); *Powell v. Bank of Am., N.A.*, 1:13-CV-03049-RWS, 2014 WL 2118821 at *n.1 (N.D. Ga. May 21, 2014) ("Georgia law is clear that where a borrower was not a party to the assignment, the borrower lacks standing to contest the assignment's validity"); *Edward v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 888, 891 (11th Cir. 2013) (holding

that borrowers lacked standing to contest an assignment under the Georgia Code and ratifying trial court's dismissal of all claims predicated on allegations of an invalid assignment); *Muhammad v. JPMorgan Chase Bank, NA*, 13-13851, 2014 WL 2210673 (11th Cir. May 29, 2014) (same). These familiar challenges to assignments have been universally rejected and Plaintiffs' claims are baseless.

**II.     All of Plaintiffs' allegations of wrongdoing against Ocwen and other parties have already been addressed and rejected – including a specific claim for Quiet Title; as such, they are barred under principles of *res judicata* and collateral estoppel and are otherwise futile as a matter of law.**

**A. All of Plaintiffs' allegations are barred by *res judicata* and collateral estoppel**

Plaintiffs have already attempted to bring a litany of claims against Defendant related to the Property and loan at issue only to have each and every one rejected by the Federal Court at either the motion to dismiss stage or upon final summary judgment. Plaintiffs' efforts culminated in a final order dated April 22, 2015,[1] from the United States District Court for the Northern District of Georgia in *Cobrey Bennett and Maryam Bennett v. Ocwen Loan Servicing, LLC*, Case No. 2:13-cv-00243-WCO-JCF, dismissing with prejudice all claims against Ocwen Loan Servicing, LLC. Repeated, vexatious attempts to assert new claims and include new parties were all considered and rejected by the Court. Plaintiffs' attempted to bring fifteen claims, all of which were dismissed at either the motion to dismiss stage or upon summary judgment: rescission due to fraud, Fair Debt Collection and Practices Act (FDCPA), negligence, intentional infliction of emotional distress, Georgia Residential Mortgage Act, breach of fiduciary duty, conversion, Real Estate Settlement and Procedures Act (RESPA), tortious interference with property rights, Georgia RICO, fraud, loss of consortium, civil conspiracy,

---

[1] Certified copies of the relevant orders are attached as exhibits. *See Garner v. US Bank National Assoc.*, 329 Ga.App. 86, 763 S.E.2d 748 (2014) (introducing certified copies of prior proceedings proves res judicata or collateral estoppel).

rescission, and quiet title. District Judge William O'Kelly described Plaintiffs' attempted claims as "nonsense," "baseless," "legally spurious" "completely meritless" and warned Plaintiffs that further attempts to bring such frivolous claims would likely result in the imposition of "significant sanctions." (*See* Attachment 5). Finally, the District Court denied Plaintiffs' attempted motion for reconsideration. (*See* Attachment 7) ("The motion does nothing more than reiterate flawed arguments already rejected by the court and attempts, yet again, to present new legal theories arising from the same evidence.").

One of the claims specifically rejected and dismissed was Plaintiffs' attempt to amend their complaint and include a claim for Quiet Title under O.C.G.A. § 23-3-60, et seq. The Federal Court rejected Plaintiffs attempted Quiet Title action for multiple reasons. (*See* Report and Recommendation, pp. 40 – 42 ("Although Plaintiffs express uncertainty as to the owner of the Security Deed, documentation attached to the original Complaint clearly shows that MERS, as nominee for Mortgage Services and its successors and assigns, possesses the Security Deed and thus holds legal title to the property."); August 12, 2014, Order adopting the Report and Recommendation). Thus, Plaintiffs' Quiet Title claim has already been rejected and is due for dismissal on that ground alone.

Plaintiffs' contentions in this Quiet Title action are indisputably barred under principles of *res judicata* and collateral estoppel as a matter of law. "The doctrine of *res judicata* prevents re-litigation of all claims which have already been adjudicated or which could have been adjudicated, between identical parties or their privies in an identical cause of action." *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486, 696 S.E.2d 667 (2010). *Res judicata* applies where there is (1) an identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent

jurisdiction. *Id.* (citing *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546, 629 S.E.2d 260 (2006)). Further, as stated by the court in *Brinson*:

> The related doctrine of collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim—so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim."

*Id.*

The parties here are identical in the two actions: Cobrey and Maryam Bennett as Plaintiffs, Ocwen Loan Servicing, LLC as Defendant. The subject matter focused exclusively on Plaintiffs' promissory note, the accompanying Security Deed securing the Property. And the Federal Court addressed and dismissed all of Plaintiffs' claims in that action with prejudice – and specifically an attempted Quiet Title claim – so there was clearly adjudication on the merits as a dismissal pursuant to Federal Rules 12(b)(6) and 56 both explicitly operate as an adjudication "on the merits," which occurred here. Fed. R. Civ. P. 41(b). Significantly, an "'adjudication on the merits' does not require 'that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases." *Piedmont Cotton Mills, Inc. v. Woelper, et al.*, 269 Ga. 109, 110, 498 S.E.2d 255 (1998) (quoting *Gamble v. Gamble*, 204 Ga. 82, 88-89(1), 48 S.E.2d 540 (1948)). "Thus, it is only where the merits were not and could not have been determined under a proper presentation and management of the case that *res judicata* is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the

9

defense is valid." *Id.* Plaintiffs' claims regarding the subject loan and the Property were denied on the merits.

All of Plaintiffs' claims are indisputably barred by *res judicata* and collateral estoppel. Any contention that the subject loan was somehow "null at the inception" or void for "fraud" is encompassed within the prior litigation. Ocwen is merely the loan servicer of the subject loan and was not the originating lender, further barring Plaintiffs' contentions. *See Jean v. American Home Mortg. Servicing, Inc.*, 2012 WL 1110090, at *4 (N.D. Ga. Mar. 30, 2012) (any allegations of deceptive lending cannot be brought against the loan servicer who did not participate in the loan transaction); *Goldman v. Aurora Loan Servs., LLC*, 2011 WL 3845498, at *5 (N.D. Ga. Aug. 29, 2011). As a result, the *res judicata* defense is effective, and Plaintiffs' latest round of claims are due to be dismissed.

### B. All of Plaintiffs' claims are frivolous and have been rejected by multiple courts.

Every claim submitted by Plaintiffs has been expressly rejected time and time again by both Georgia federal and state courts.

First, Plaintiffs submitted their latest version of the well-rejected "split the note" and "show me the note" theories. *See Tonea v. Bank of America, N.A.*, -- F.Supp.2d --, 2014 WL 1092348, at *10 (N.D. Ga. Mar. 18, 2014) (rejecting and dismissing "produce the original promissory note" theory); *Carr v. Bank of America*, 2013 WL 8609735, at *5 (N.D. Ga. Oct. 24, 2014) (quoting *Sellers v. Bank of America, N.A.*, 2012 WL 1873005, at *7 (N.D. Ga. May 21, 2012)) ("Georgia law does not require a lender to produce the original loan document even when the lender is taking affirmative action such as commencing a foreclosure proceeding").

Similarly, Plaintiffs' arguments related to non-party Selene's prior security deed and Plaintiffs' prior bankruptcy is incorrect, and they cite no authority in support of their statements.

Judge O'Kelly dealt directly with these contentions in his Order on the Motion to Dismiss. (August 12, 2014, Order, Attachment 3). Even if a debtor in bankruptcy receives a discharge as to personal liability on a promissory note such a discharge does not extinguish the underlying security interest, nor does it prevent the debtor from originating a new loan to pay off the previous security interest as happened here. *See In re Mele,* 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) ("The fresh start notwithstanding, a Chapter 7 discharge does not avoid or otherwise affect a lien against property of the debtor"); *In re Andrews,* 500 B.R. 214, 220 (Bankr. N.D. Ga. 2013) ("One of the fundamental principles of bankruptcy is that a lien, as an in rem interest in a debtor's property, passes through bankruptcy unaffected unless something happens to it during the case"); *In re Jennings,* 454 B.R. 252, 255 (Bankr. N.D. Ga. 2011) (quoting *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991)) ("a discharge extinguishes only 'the personal liability of the debtor'...Codifying the rule in *Long v. Bullard,* the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy"). Factually speaking, Plaintiffs' allegations relating to their previous bankruptcy have nothing to do with Ocwen, which services a loan that originated in 2012, long after any bankruptcy petition or discharge relating to Plaintiffs. (See August 12, 2014, Order, Attachment 11, pp. 3-4).

Once again, this is a simple matter of a residential mortgage loan with a valid and enforceable Security Deed on the property.

## III. Plaintiffs' purported claim for adverse possession is baseless.

Plaintiffs' are also apparently attempting to claim quiet title based on adverse possession (Compl., p. 9) but this is likewise frivolous and baseless under Georgia law. "Prescription shall not run against the owner or holder of a mortgage, a deed to secure debt, a bill of sale to secure debt, or any other instrument creating a lien on or conveying an interest in real or personal

Case 2:15-cv-00170-WCO-JCF   Document 40   Filed 09/29/15   Page 14 of 16

property as security for debt in favor of a person who has actual or constructive notice of such instrument." O.C.G.A. § 44-5-176; *see also Lawhorn v. Steele*, 232 Ga. 857, 859, 209 S.E.2d 191 (1974) (holding that where a grantee of a security deed has title the time period necessary for adverse possession does not even begin to run until the security deed is foreclosed on or sold); *Dickson v. Davis*, 237 Ga. 883, 884, 230 S.E.2d 279 (1976) ("one in possession of property who makes payments to the holder of the security deed on the property, such payments being either rent or payments on an indebtedness that the property itself secured, cannot sustain a claim of adverse possession against the security deed holder as a matter of law"); *Vasko v. United States*, 581 Fed.Appx. 894, 898 (Fed. Cir. 2014) (under Georgia law there can be no adverse possession if the claimant had actual or constructive notice of the security deed under § 44-5-176).[2]

Plaintiffs' adverse possession claim is baseless as a matter of law and due to be rejected.

## IV.   Plaintiffs' unauthorized and improper Revocation of Power of Attorney and Cancellation of Security Deed recordings must be stricken and expunged from the public record.

On December 17, 2014, Plaintiffs recorded a document entitled "Affidavit of Notice of Revocation of Power of Attorney and Termination of Attorney in Fact" with the clerk of the Superior Court of Forsyth County as Document ID 014455860003 at Book 7221, Page 353-355.

---

[2] Even more, Plaintiffs' claim is absurd as such a claim for adverse possession would not ripen until twenty years after notice of adverse claim. See O.C.G.A. §§ 44-5-161, 163; *Washington v. Brown*, 290 Ga. 477, 480, 722 S.E.2d 65, 67 (2012) (adverse possession claim to the disputed property for eighteen years fails as a matter of law) *Cowart v. Strickland*, 170 Ga. 530, 153 S.E. 415, 416 (1930) (title by prescription, where possession is inceptively permissive, would not ripen until twenty years after notice of adverse claim); *Thigpen v. Jaillett*, 269 Ga. App. 371, 372, 604 S.E.2d 246, 248 (2004) (permissive possession of property for less than 20 years). And even assuming *arguendo* that Plaintiffs should be subjected to the shortened timeline applicable to those who have bought in good faith and are permitted to remain in undisputed possession of the premises, a full seven uninterrupted years of possession from the date of first entry is required for a prescriptive run in favor of the possessing party. See O.C.G.A. §§ 44-5-161, 164; *McCrary v. Clements*, 95 Ga. 778, 22 S.E. 675, 676 (1895). By Plaintiffs' own admission, the note and deed permitting them to access the Property occurred no earlier than November of 2012, and Plaintiffs' reliance on this legal theory is misplaced

This document purported to "revoke, terminate, and rescind all Powers of Attorney" given by the Plaintiffs/Counter-Defendants to the lender. The execution or recording of this document was not authorized by Ocwen or any party associated with the lender or lender's assigns or nominee. (Kearse Aff., ¶ 9, Exhibit D). Such unilateral actions on the part of borrowers seeking to revoke their powers of attorney are invalid. *See Richards v. Wells Fargo Bank, N.A.*, 325 Ga.App. 722, 754 S.E.2d 770 (2014); *Gurr v. Gurr*, 198 Ga. 493, 505(4), 32 S.E.2d 507 (1944); *Metellus v. Bank of America, N.A.*, 2012 WL 7763041, at *8 (N.D. Ga. Nov. 2, 2012).

On or about January 13, 2015, Plaintiffs/Counter-Defendants purported to unilaterally cancel the Security Deed by recording a document entitled "Cancellation of Security Deed as Reconveyance of Title" with the clerk of the Superior Court of Forsyth County as Document ID 014488100020 at Book 7245, Page 633-652. Therein, the Plaintiffs alleged that the Security Deed and Note had been paid in full thereby authorizing the Clerk of the Superior Court of Forsyth County to cancel the Security Deed of record. O.C.G.A. §44-14-3 provides that only a grantee (defined as "heirs, devisees, executors, administrators, successors, transferees or assigns, and any servicing agent or any person or entity to whom indebtedness is paid on behalf of or by any grantor") or the holder of the instrument may provide the notice of satisfaction or cancellation required for release of the security interest in the Property. O.C.G.A. § 44-14-4, alternatively, provides that a mortgagor who has paid off his or her mortgage must present an order of the mortgagee directing that the mortgage be canceled prior to the clerk recording the canceled and satisfied mortgage instrument. The execution or recording of this document was not authorized by Ocwen or any party associated with the lender or lender's assigns or nominee. (Kearse Aff., ¶ 10, Exhibit E).

The underlying debt obligation of the Note and Security Deed remains unsatisfied. The Bennett loan has not been paid off, and has a current outstanding principal balance of $282,123.01 and a total payoff amount as of May 21, 2015, of $316,401.60. The Bennett loan is currently due for the August 1, 2013, payment. (Kearse Aff., ¶ 8, Exhibit C). As the loan is not satisfied and Plaintiffs' frivolous claims are due to be rejected, both the "Affidavit of Notice of Revocation of Power of Attorney and Termination of Attorney in Fact," recorded on December 17, 2014, and the improper "Cancellation of Security Deed as Reconveyance of Title," recorded on January 13, 2015, are both due to be expunged and removed from the public record.

Finally, once an underlying action has been dismissed the trial court has the authority to cancel any *lis pendens* residing on the property. *Huston v. Young*, 255 Ga.App. 169, 171, 564 S.E.2d 780 (2002); *Woodberry v. Bank of America, N.A.*, 2012 WL 113658, at *2 (N.D. Ga. Jan. 12, 2012). As such, the Court here should dismiss and expunge any notice of *lis pendens* filed or recorded by Plaintiffs.[3]

**V.    Conclusion**

Plaintiffs' Quiet Title Action is completely baseless, as is any attempted claim for adverse possession. The Court or Special Master should conclude that:

a) Plaintiffs' Quiet Title Against All the World action should be denied and dismissed with prejudice;

b) The Security Deed is a valid and enforceable first priority lien on the Property;

c) The Security Deed was not cancelled by the false satisfaction recorded without Defendant's knowledge or consent;

---

[3] If a Special Master is appointed, Ocwen will move for a re-apportionment of the fee allocation pursuant to the Court's previous Orders. (*See* Orders, Section III).

d) To the extent that Defendant's security interest has been impaired by the false satisfaction, Defendant is entitled to have the Security Deed reinstated;

e) The Security Deed is superior to any liens, encumbrances or rights claimed by Plaintiffs Maryam and Cobrey Bennett;

f) The "Affidavit of Notice of Revocation of Power of Attorney and Termination of Attorney in Fact" recorded with the clerk of the Superior Court of Forsyth County as Document ID 014455860003 at Book 7221, Page 353-355, on December 17, 2014, should be expunged from the public record;

g) The "Cancellation of Security Deed as Reconveyance of Title" recorded with the clerk of the Superior Court of Forsyth County as Document ID 014488100020 at Book 7245, Page 633-652, on January 13, 2015, should be expunged from the public record;

h) The *lis pendens* filed by Plaintiffs should be expunged from the public record;

Respectfully submitted this ___ day of July, 2015.

_____

Keith S. Anderson (Bar No. 136246)
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
kanderson@babc.com
ATTORNEY FOR DEFENDANT OCWEN LOAN SERVICING, LLC

15

## IN THE SUPERIOR COURT OF FORSYTH COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **COBREY BENNETT and** | ) | |
| **MARYAM BENNETT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action** |
| | ) | |
| **v.** | ) | **Case No. 14CV-0891-2** |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

      Maryam and Cobrey Bennett
      965 Summerfield Drive
      Cumming, GA 30040

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to his regular mailing address, on this the _____ day of July, 2015.

                              _____

                              Keith S. Anderson (GA Bar No. 136246)

16

# ALLONGE TO NOTE

DATE OF NOTE:     11/19/2012

MORTGAGOR (S):   COBREY BENNETT SR.

PROPERTY ADDRESS:     965 SUMMERFIELD DR

                                       CUMMING, GA  30040

LOAN AMOUNT:     $284,900.00

LOAN NUMBER:     ████████

PAY TO THE ORDER OF

ALLQUEST HOME MORTGAGE CORPORATION

WITHOUT RECOURSE

MORTGAGE SERVICES III, LLC

_____

Cheryl Drach, VP/Post Closing Manager

ALLQUEST HOME MORTGAGE CORPORATION
6110 PINEMONT DRIVE
HOUSTON, TX 77092

NOTE ALLONGE

Loan #:           █████████
Note Date:      11/26/2012

Borrower Name:    Bennett Cobrey Sr

Property Address:   956 Summerfield Dr
                        Cumming, GA 30040

Loan Amount:     $284,900.00

PAY TO THE ORDER OF
WITHOUT RECOURSE:

ALLQUEST HOME MORTGAGE CORPORATION

_____
Sharman Baum, Assistant Secretary



*Ocwen Loan Servicing, LLC*
*1661 Worthington Road, Suite 100*
*West Palm Beach, FL 33409*

WWW.OCWEN.COM

05/27/2015

## PAYOFF QUOTE

Loan Number: ▨▨▨▨▨
Customer Name(s):  Cobrey Bennett
Property Address:  965 Summerfield Dr, Cumming, GA 30040

As requested, the following is a breakdown of the payoff funds due on or before 06/03/15. **Property taxes or insurance payments that come due may still be paid after this quote is issued.**

| Description | Amount Due |
|---|---|
| Principal | 282,123.01 |
| Interest | 23,986.03 |
| Escrow Advance | 9,776.86 |
| Satisfaction Cost | 12.00 |
| Escrow Payment | 268.02 |
| Late Charges | 1,566.73 |
| **Total Amount Due** | **$317,732.65** |

| | |
|---|---|
| Next Due Date | 08/01/13 |
| Quoted Date | 05/27/15 |
| Payoff Quote Expiration Date | 06/03/15 |
| Grace Period End Date | 05/16/15 |
| Original Principal Balance | $284,900.00 |
| Per Diem | $32.84 |

Given below is a breakdown of the interest that is shown above in the amount of $23,986.03 due on or before 06/03/2015. Please note that interest is generally charged in arrears. On a normal amortizing loan, the current month's payment will include the interest charges for the previous month. The unpaid principal balance is not the payoff amount.

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|---|---|---|---|---|---|---|
| 07/01/13 | 07/31/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



*Ocwen Loan Servicing, LLC*
*1661Worthington Road, Suite 100*
*West Palm Beach, FL 33409*

WWW.OCWEN.COM

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|-----------------|---------------|----------------|----------------|--------|
| 08/01/13 | 08/31/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 09/01/13 | 09/30/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 10/01/13 | 10/31/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 11/01/13 | 11/30/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 12/01/13 | 12/31/13 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 01/01/14 | 01/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 02/01/14 | 02/28/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 03/01/14 | 03/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 04/01/14 | 04/30/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 05/01/14 | 05/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 06/01/14 | 06/30/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 07/01/14 | 07/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 08/01/14 | 08/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 09/01/14 | 09/30/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 10/01/14 | 10/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 11/01/14 | 11/30/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 12/01/14 | 12/31/14 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 01/01/15 | 01/31/15 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 02/01/15 | 02/28/15 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 03/01/15 | 03/31/15 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 04/01/15 | 04/30/15 | 999.19 | 4.25 | 282,123.01 | 33.30618900 | 30 |
| 05/01/15 | 05/31/15 | 1,018.35 | 4.25 | 282,123.01 | 32.84994000 | 31 |
| 06/01/15 | 07/01/15 | 985.50 | 4.25 | 282,123.01 | 32.84994000 | 30 |

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



**Ocwen Loan Servicing, LLC**
*1661 Worthington Road, Suite 100*
*West Palm Beach, FL 33409*

WWW.OCWEN.COM

1. All payoff funds must be sent via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check or Attorney's Escrow Check. Items which are not certified will be returned and the payoff will not be processed.

2. **Wire transfer is the preferred method of payment since it is faster, more convenient, and safer for our customers than other options. This method may mean less days of per diem interest that you have to pay on the loan being paid off, so it may end up being cheaper for you as well.** To make a wire transfer, all you need to do is visit your bank and ask how to perform this simple transaction. Most banks also provide this information on their internet website. Please include borrower last name, property address, and loan number on all remittances. All of the information you need to send a wire transfer to Ocwen is listed below:

| Make Payment To: | Ocwen Loan Servicing, LLC in Trust for Various Investors and Mortgagors |
| --- | --- |
| Ocwen's Account Number: | ██████████ |
| ABA Routing Number: | ██████████ |
| Ocwen's Bank Address: | Wells Fargo Bank, NA<br>San Francisco, California |
| Your Ocwen Loan Number: | Ocwen Loan # ██████████ |

3. If you cannot send a wire transfer, please send the check by **Overnight Courier** to the following address (include all of the next line); Ocwen Loan Servicing, LLC; Attention: Cashiering/HRC Payoff Dept; 1661 Worthington Rd; Suite 100; West Palm Beach, FL 33409;. Reference: Ocwen Loan # ██████████
Please see section 1 above for accepted check types. Always include your Ocwen loan number with your remittance.

4. To the extent permitted by law, we reserve the right to correct any portion of this statement at any time. All balances are subject to change as a result of any transactions, the assessment of any fees, or any costs being incurred with respect to the account which occur prior to the application of payoff funds. If the account is referred to foreclosure, becomes subject to a bankruptcy proceeding, or has any other fees or costs assessed to it prior to the Payoff Quote Expiration Date, this payoff quote is deemed invalid and a new payoff quote will be provided to you. Similarly, if any payments applied to this account within the prior thirty (30) days of the date of this payoff quote are reversed for any reason, including but not limited to for insufficient funds or a stop payment being placed on a check, this payoff quote is deemed invalid and a new payoff quote must be obtained from Ocwen to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due.

5. Upon receipt of payoff funds, Ocwen will verify all amounts due and contact the issuer of the funds in the event of any discrepancies. In the event that the payoff funds received are less than the total amount necessary to satisfy the loan, Ocwen will return the funds and continue to accrue interest on the loan.

6. Issuance of this statement does not suspend the contractual requirement to make loan payments when due. If payoff funds are received after the expiration of the grace period, if such a period is applicable to this loan, a late charge will be due. Payment of all late charges will be required to be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

7. Issuing this payoff statement will not stop future escrow disbursements. Property taxes or insurance may be paid after this quote is issued. If such disbursements create escrow advances and change the amount due to satisfy the loan, they must be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust.

8. If the account is past due, collection expenses and legal fees may be accruing. If this is an adjustable rate Note, the per diem may change prior to payoff.

9. Upon receipt of the entire payoff amount, Ocwen will execute a release and discharge of the Deed of Trust/Mortgage and, if necessary, will file a withdrawal in connection with any legal action if it has been taken to collect this obligation.

10. Ocwen undertakes no obligation to investigate the circumstances surrounding the payoff of an account. As such, it is the customer's responsibility to notify Ocwen if the terms of the Note of Deed of Trust/Mortgage allow for waiver of the prepayment penalty in their circumstances and provide the requisite documentation to demonstrate waiver of a prepayment penalty in accordance with the terms of the Note or Deed of Trust/Mortgage. Such documentation must be provided to the Payoff Department at the address above within sixty (60) days following the date that the payoff was made.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



*Ocwen Loan Servicing, LLC*
*1661 Worthington Road, Suite 100*
*West Palm Beach, FL 33409*                          WWW.OCWEN.COM

11. If you have questions regarding this payoff quote, please contact our Home Retention Department at (800) 746-2936 or by fax at (407) 737-5693.

12. If after speaking with your Home Retention Consultant, you still have questions or concerns, please feel free to contact the Ocwen consumer advocate at the address above, by email at Ombudsman@ocwen.com or by phone at (800) 390-4656.

13. Please visit Ocwen's website at www.ocwen.com to verify the social security number on file for the purposes of year-end tax reporting.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

COBREY BENNETT, et al.,  :
          :
   Plaintiffs,   :
          :  CIVIL ACTION FILE
v.         :  NO.: 2:15-CV-170-WCO-JCF
          :
OCWEN LOAN SERVICING, LLC., :
          :
   Defendant.  :

## ORDER

This case was removed to this Court on August 14, 2015 from the Superior Court of Forsyth County. (*See* Doc. 1). As significant litigation already occurred in state court, many documents were attached to the removal notice and then docketed separately. (*See* Docs. 1, 2-23). One of those documents is Defendant's Motion for Summary Judgment. (Doc. 13). It appears that during the process of transferring the documents some of the pages to this motion went missing. (*See id.* at 8 (the motion ends in the middle of a sentence)).

The Court acknowledges that other issues, specifically Plaintiffs' motion to remand, must still be handled, however, in order to be prepared to rule on this motion if necessary, the Court **DIRECTS** Defendant to re-file the motion in its entirety.

**IT IS SO ORDERED** this 28th day of September, 2015.

  /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

NAME: **Cobrey Bennett**

ADDRESS: **965 Summerfield Dr GA, Cumming 30040**

PLANT COVER DATE: **05/08/2012**

*PLEASE NOTE ADDRESS AND SPELLING OF LAST NAME

CLIENT ORDER #: **T-88613**

REF #:

## LOCATION

SITE ADDRESS: **965 Summerfield Dr GA, Cumming 30040**

COUNTY: **Forsyth**

PARCEL #: **C03134**

MAILING ADDRESS:

## CURRENT CONVEYANCE(S)

BUYER/GRANTEE: **Cobrey Bennett, Sr. and Maryam Bennett, as joint tenants with rights or survivorship**

SELLER/GRANTOR: **O'Dwyer Homes, Inc**

CONVEYS: **Warranty Deed**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| **11/29/2006** | **12/01/2008** | **4542/608** | **$10.00** |

## CURRENT CONVEYANCE(S)

BUYER/GRANTEE: **O'Dwyer Homes, Inc**

SELLER/GRANTOR: **Yost Communities, Inc.**

CONVEYS: **Warranty Deed**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| **02/02/2006** | **02/20/2008** | **4167/265** | **$10.00** |

## CURRENT CONVEYANCE(S)

BUYER/GRANTEE: **X**

SELLER/GRANTOR: **X**

CONVEYS: **X**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| **X** | **X** | **X** | **X** |

NAME:        **Cobrey Bennett**

ADDRESS:        **965 Summerfield Dr GA, Cumming 30040**

PLANT COVER DATE:    **05/08/2012**

## CURRENT MORTGAGE(S) / OPEN DEEDS OF TRUST

BORROWER:    **Corbrey Bennett, Sr. and Maryam Bennett, Husband and Wife**

LENDER:    **MERS, Inc., as a nominee for Quicken Loans Inc.**

TRUSTEE:    **X**

CONVEYS:    **Security Deed**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| 11/29/2006 | 12/01/2006 | 4542/609 | $300,000.00 |

## ASSIGNMENT

ASSIGNOR:    **MERS, Inc., as a nominee for Quicken Loans Inc.**

ASSIGNEE:    **Selene Finance**

        **X**

CONVEYS:    **Assignment**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| 07/09/2010 | 08/16/2010 | 5751/430 | |

## CURRENT MORTGAGE(S) / OPEN DEEDS OF TRUST

BORROWER:    **Corbrey Bennett, Sr. and Maryam Bennett, Husband and Wife**

LENDER:    **MERS, Inc., as a nominee for Quicken Loans Inc.**

TRUSTEE:    **X**

CONVEYS:    **Security Deed**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| 11/29/2006 | 12/01/2006 | 4542/634 | $77,700.00 |

## CURRENT MORTGAGE(S) / OPEN DEEDS OF TRUST

BORROWER:    **X**

        **X**

LENDER:    **X**

TRUSTEE:    **X**

CONVEYS:    **X**

| DATE OF DOCUMENT: | DATE RECORDED: | DOCUMENT NUMBER / BOOK PAGE | CONSIDERATION: |
|---|---|---|---|
| X | X | X | X |

Taxes

NAME:     **Cobrey Bennett**

ADDRESS:     **965 Summerfield Dr GA, Cumming 30040**

| PLANT COVER DATE: | **05/08/2012** |
| --- | --- |

### TAX INFORMATION

PARCEL ID   **C03134**

TAX YEAR:     **2011**

### ASSESMENT INFORMATION

LAND:     **$50,000.00**          BUILDING:   **$171,930.00**          TOTAL ASSESED VALUE:   **$221,930.00**

TOTAL TAXES **$252,38**

| TAX | AMOUNT<br>$2,363.45 | STATUS<br>Paid | PAID DATE / DUE DATE<br>10/26/2011 |
| --- | --- | --- | --- |

SUPPLEMENTAL TAXES:                              DELINQUENT TAXES:

COMMENTS:          **Any tax information if available is provided as a courtesy**
                            **Client assumes responsibility for confirmation of any/all amounts.**

Page 3

NAME:          **Cobrey Bennett**

ADDRESS:       **965 Summerfield Dr GA, Cumming 30040**

PLANT COVER DATE:   **05/08/2012**

|   | NAMES RUN | JUD | LIEN | UCC |
|---|---|---|---|---|
| 1 | Cobrey Bennett | X | X | X |
| 2 | Maryam Bennett | X | X | X |
| 3 | | | | |

**ADDITIONAL INFORMATION**

Lien found Book and Page No: 271/211

NAME: **Cobrey Bennett**

ADDRESS: **965 Summerfield Dr GA, Cumming 30040**

| PLANT COVER DATE: | **05/08/2012** |

### LEGAL DESCRIPTION

**All the following legal description see attached in Vesting Deed**

<u>**DISCLAIMER**</u>

This report is intended for informational purposes only, and is not an opinion of title, nor a policy of title insurance, nor a commitment to issue such policy. All information contained herein was obtained by an examination of public records in the above named jurisdiction, and is as accurate as reasonable care can make it. Efficax Global Solutions, makes no warranties, express or implied, regarding the insurability or marketability of title for the subject property and assumes no liability whatsoever for the accuracy of the information contained herein beyond the exercise of such reasonable care.

Doc ID: 004182700001 Type: QLR
Filed: 12/01/2006 at 10:37:03 AM
Fee Amt: $387.80 Page 1 of 1
Transfer Tax: $577.80
Forsyth County, GA
Douglas Sorrells Clerk Superior Ct
BK **4542** PG **608**

Return to:
**GANEK, WRIGHT & DOBKIN, PC**
Harold L. Minsk, Esq.
1735 North Brown Road #150
Lawrenceville, GA  30043
Phone: (678)376-8008
Facsimile: (678)376-2292
HM061236

## LIMITED WARRANTY DEED

STATE OF GEORGIA

COUNTY OF GWINNETT

THIS INDENTURE, made this 29th day of November, in the year 2006, between O'DWYER HOMES, INC., hereinafter called Grantor, and COBREY BENNETT, SR. AND MARYAM BENNETT, as Joint Tenants with Rights or Survivorship, hereinafter called Grantee (the words, "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH: GRANTOR, FOR AND IN CONSIDERATION of the sum of TEN ($10.00) DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

All that tract or parcel of land lying and being in Land Lot 1247 of the 3rd District, 1st Section, Forsyth County, Georgia, being Lot 76, Block A, Sienna Subdivision (fka Kelly Mill Subdivision), Unit Two, as per revised plat recorded in Plat Book 99, Pages 28-43, Forsyth County, Georgia records, which plat is incorporated herein and made a part hereof by reference.

This conveyance is made subject to the following:

1. State and county ad valorem real property taxes and assessments for 2007, a lien not yet due and payable at the time of execution, and subsequent years.

2. All easements and restrictions of record.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND GRANTOR will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons owning, holding or claiming by, through or under Grantor, but not otherwise.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered
this 29th day of November, 2006,
in the presence of:

O'Dwyer Homes, Inc.

BY:
Cheryl Merk
Assistant Secretary

Witness

Notary Public
My Commission Expires:

(Notary Seal)

KIMBERLY A. COOPER
NOTARY
EXPIRES
GEORGIA
FEB. 21, 2010
PUBLIC
GWINNETT COUNTY

(Seal)
O'DWYER HOMES
CORPORATE
SEAL
1983
GEORGIA

(HM061236.PFD/HM061236/18)



**Return to:**
**GANEK, WRIGHT & DOBKIN, PC**
Harold L. Minsk, Esq.
1735 North Brown Road
Lawrenceville, GA  30043
Phone: (678)376-8008
Facsimile: (678)376-2292
HM060053

Doc ID: 002543490001 Type: GLR
Filed: 02/20/2006 at 12:49:46 PM
Fee Amt: $134.40 Page 1 of 1
Transfer Tax: $104.40
Forsyth County, GA
Douglas Sorrells Clerk Superior Ct
BK**4167** PG**265**

## LIMITED WARRANTY DEED

STATE OF

COUNTY OF GWINNETT

THIS INDENTURE, made this 2nd day of February, in the year 2006, between YOST COMMUNITIES, INC., hereinafter called Grantor, and O'DWYER HOMES, INC., hereinafter called Grantee (the words, "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

### WITNESSETH:

GRANTOR, FOR AND IN CONSIDERATION of the sum of TEN  ($10.00)  DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

All that tract or parcel of land lying and being in Land Lot 1247 in the 3rd District, 1st Section, Forsyth County, Georgia, being Lots 66 and 76 of Sienna Subdivision, Unit Two, as per plat recorded at Plat Book 87, Pages 105-120, Forsyth County, Georgia records, which plat is incorporated herein and made a part hereof by reference.

This conveyance is made subject to the following:

1. State and county ad valorem real property taxes and assessments for 2006, a lien not yet due and payable at the time of execution, and subsequent years.

2. All easements and restrictions of record.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND GRANTOR will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons owning, holding or claiming by, through or under Grantor, but not otherwise.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered
this 2nd day of February, 2006,
in the presence of:

Yost Communities, Inc.

BY: _____

John R. Yost
President

_____
Witness

_____
Notary Public
My Commission Expires:

(CORPORATE SEAL)

(Notary Seal)

JESSICA J. GALLOWAY
COMMISSION EXPIRES
JAN
10
2009
GWINNETT CO., GEORGIA
NOTARY PUBLIC

(HM060053.PHD/HM060053/13)

Return To:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI  48152

Doc ID: 004162720025 Type: GLR
Filed: 12/01/2006 at 10:38:04 AM
Fee Amt: $955.00 Page 1 of 25
Intangible Tax: $900.00
Forsyth County, GA
Douglas Sorrells Clerk Superior Ct
BK 4542 PG 609-633

Prepared By:



Ganek, Wright, & Dobkin, P.C.
1735 North Brown Rd. Suite 150
Lawrenceville, GA 30043

JE

Hm061236

[Space Above This Line For Recording Data]

## SECURITY DEED

4879577612

MIN 100039048795776121

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated       November 29, 2006
together with all Riders to this document.
(B) "Borrower" is Cobrey Bennett, Sr. and Maryam Bennett, husband and wife

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3011  1/01
1219687746
-6A(GA) (0608)
Page 1 of 14              Initials: MB CB

VMP MORTGAGE FORMS - (800)521-7291

q04879577612 0233 342 0114

4879577612

**(D) "Lender"** is Quicken Loans Inc.

Lender is a Corporation
organized and existing under the laws of          the State of Michigan
Lender's address is 20555 Victor Parkway, Livonia, MI  48152

**(E) "Note"** means the promissory note signed by Borrower and dated      November 29, 2006
The Note states that Borrower owes Lender Three Hundred Thousand and 00/100

Dollars

(U.S. $300,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than      December 1, 2036

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [XX] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [XX] Other(s) [specify] |

                                        Legal Attached Closing Attorney's Affid-
                        Waiver of Borrower's Rights/                          avit

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____

-6A(GA) (0005)                        Page 2 of 14                                    Form 3011  1/01

Q04879577612 0233 342 0214

4879577612

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

| County | of | Forsyth | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:        New Home       which currently has the address of
965 Summerfield Drive                                          [Street]
           Cumming               [City] , Georgia 30040       [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(GA) (0005)                      Page 3 of 14           Initials:          Form 3011 1/01

q04879577612 0233 362 0314

4879577612

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ 11/29/2006 (Seal)
Cobrey Bennett, Sr.                    -Borrower

_____ 11/29/2006 (Seal)
Maryam Bennett                         -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

STATE OF GEORGIA,                 Forsyth        County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness



_____  _____ County
Notary Public,
State of Georgia

-8A(GA) (0005)                Page 14 of 14            Form 3011  1/01

q04879577612 0233 342 1424



Doc ID: 004182740010 Type: GLR
Filed: 12/01/2006 at 10:39:22 AM
Fee Amt: $282.00 Page 1 of 10
Intangible Tax: $234.00
Forsyth County, GA
Douglas Sorrells Clerk Superior Ct
BK**4542** PG**634-643**

Ganek, Wright, & Dobkin, P.C.
1735 North Brown Rd. Suite 150
Lawrenceville, GA 30043

After Recordation Return to:

Sharyn Looby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

JE
HM061236A
4893771864

## SECURITY DEED   MIN 100039048937718643

THIS DEED is made this      29th      day of      November      2006      , between the Grantor,
Cobray Bennett, Sr. and Maryam Bennett, husband and wife

(herein "Borrower"), and the Grantee,
Mortgage Electronic Registration Systems, Inc., ("MERS"), solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
Quicken Loans Inc.

("Lender") is organized and existing under the laws of      the State of Michigan      .
and has an address of 20555 Victor Parkway, Livonia, MI   48152

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $77,700.00      ,
which indebtedness is evidenced by Borrower's note dated      November 29, 2006
and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on      December 1, 2021      ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the
performance of the covenants and agreements of Borrower herein contained. Borrower does hereby grant and convey to MERS,
(solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of
sale, the following described property located in the County of      Forsyth
, State of Georgia:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

which has the address of      965 Summerfield Dr.                                    [Street]
Cumming                [City,] Georgia      30040      [ZIP Code] (herein "Property Address");

GEORGIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS



Form 3811
Amended 7/02

VMP®-76N(GA) (0307).02
Page 1 of 4      1222737909
VMP Mortgage Solutions, Inc.



q04893771864 0233 344 0104

**Exhibit "A"**
**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 1247 OF THE 3RD DISTRICT, 1ST SECTION, FORSYTH COUNTY, GEORGIA, BEING LOT 76, BLOCK A, SIENNA SUBDIVISION (FKA KELLY MILL SUBDIVISION), UNIT TWO, AS PER REVISED PLAT RECORDED IN PLAT BOOK 99, PAGES 28-43, FORSYTH COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

FILE #:          HM061236

Doc ID: 019183890001 Type: QLR
Filed: 08/16/2010 at 02:26:04 PM
Fee Amt: $7.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK **5751** PG **430**

RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**                Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR QUICKEN LOANS INC.** G4318 Miller Road, Flint, MI 48507 **(Assignor)** by these presents does assign and set over, without recourse, to **SELENE FINANCE LP** 9990 Richmond Ave., Suite 400 South, Houston, TX 77042 **(Assignee)** the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by **COBREY BENNETT, SR. AND MARYAM BENNETT, HUSBAND AND WIFE** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') SOLELY AS NOMINEE FOR QUICKEN LOANS INC..   Said mortgage Dated: 11/29/2006 is recorded in the State of GA, County of Forsyth on 12/1/2006, Book 4542 Page 609 AMOUNT: $ 300,000.00    Property Address: 965 SUMMERFIELD DRIVE, CUMMING, GA 30040

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on:  July 9, 2010
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR QUICKEN LOANS INC.

By: _____

M. Arndt, Vice President

BENNETT   EK  *10024572*

On 07/09/2010, before me, the undersigned, M. Arndt, who acknowledged that he/she is Vice President of/  for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS NOMINEE FOR QUICKEN LOANS INC..

SIGNED, SEALED AND DELIVERED in the presence of:        State of Texas, County of Tarrant
                                                         Date Notarized: 07/09/2010

_____
Unofficial Witness: T. Peatrowsky

_____
J. Flores
Notary public, State of Texas
My commission expires: October 28, 2013

J. FLORES
Notary Public, State of Texas
My Commission Expires
October 28, 2013

MIN 100039048795776121 MERS Phone 888-679-6377
GA   Forsyth                              CITI//SELEN/WL48/201



TO HAVE AND TO HOLD such property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed; and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.



**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Deed. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Deed without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.

Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

4893771864

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignments of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed, Lender shall cancel this Deed without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**23. Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

### REQUEST FOR NOTICE OF DEFAULT AND
### FORECLOSURE UNDER SUPERIOR SECURITY
### DEEDS, MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

| | | |
|---|---|---|
| _____ 11/29/2006 (Seal) | _____ (Seal) | |
| Cobrey Bennett, Sr.          -Borrower | Maryam Bennett          -Borrower | |
| _____ (Seal) | _____ (Seal) | |
|          -Borrower |          -Borrower | |
| _____ (Seal) | _____ (Seal) | |
|          -Borrower |          -Borrower | |
| _____ (Seal) | _____ (Seal) | |
|          -Borrower |          -Borrower | |

*[Sign Original Only]*

STATE OF GEORGIA,

Signed, sealed and delivered in the presence of:

Gwinnett
County ss:

_____
Unofficial Witness

_____          Forsyth          County
Notary Public,
State of Georgia

VMP -76N(GA) (0307).02          Page 4 of 4          Form 3811

**Exhibit A**
Legal Description to be attached to Seller's Affidavit/Agreement

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 1247 OF THE 3RD DISTRICT, 1ST SECTION, FORSYTH COUNTY, GEORGIA, BEING LOT 76, BLOCK A, SIENNA SUBDIVISION (FKA KELLY MILL SUBDIVISION), UNIT TWO, AS PER REVISED PLAT RECORDED IN PLAT BOOK 99, PAGES 28-43, FORSYTH COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.



ATHEN



## GEORGIA DEPARTMENT OF REVENUE

### STATE TAX EXECUTION

| EXECUTION NUMBER | TOTAL |
|---|---|
| REV 11011453 | $1,316.84 (Includes 50.00 Costs) |

**GEORGIA, FULTON COUNTY**

To ALL and singular sheriffs of this state, the State Revenue Commissioner or his authorized representatives, greetings:

**YOU ARE HEREBY COMMANDED,** that of the goods and chattels, or if none be found, then the lands and tenements of

COBREY G. BENNETT                          **JOINTLY AND SEVERALLY**
XXX-XX-▨
MARYAN T. BENNETT
XXX-XX-▨
965 SUMMERFIELD DR
CUMMING, GA 30040-1016

you cause to be made by levy and sale the sum of the dollars and cents hereinafter shown, said sum representing delinquent tax liabilities of the named taxpayer(s) assessed under the taxing Acts of this State and the Georgia Public Revenue code for the taxable period(s) indicated below together with interest on the total as shown below at the rate specified in Code Section 48-2-40 from the date of this execution until said total amount is paid, plus all collection fees and costs which have accrued and which may hereafter accrue.

You are further commanded to pay over to the Department of Revenue of the State of Georgia the aforesaid amounts upon collection thereof and to have you then and there this writ.

| TAX TYPE | TAX PERIOD | AMOUNT DUE (REV 010071) |
|---|---|---|
| INDV INCOME | 01/01/09-12/31/09 | $1,266.84 |

Witness the undersigned State Revenue Commissioner of Georgia on this date of        JANUARY 24, 2011.

*Douglas J. MacGinnitie*
Douglas J. MacGinnitie
State Revenue Commissioner

| | |
|---|---|
| Principal | $918.00 |
| Interest | 91.80 |
| Penalty | 45.90 |
| Collection Fee | 211.14 |
| Costs | 50.00 |
| Total | $1,316.84 |

The State Revenue Commissioner can find no property of the defendant on which to levy the within tax execution.

This ____ day of _____, _____

_____
Authorized Representative of the State Revenue Commissioner

Doc ID: 012346830001 Type: LEN
Filed: 05/05/2011 at 03:40:21 PM
Fee Amt: $5.00 Page 1 of 1
Forsyth County, GA
Greg G. Allen Clerk Superior Ct
BK 271  PG 211

ounty
ook No. _____ Page No. _____ at _____ a.m.
_____. p.m.

_____
Clerk

30/05/2012                     qpublic4.qpublic.net/ga_forsyth_display.php?KEY=C03 134

# FORSYTHCOUNTY
QUALITY. GROWTH. PROGRESS. GEORGIA – BOARD OF TAX ASSESSORS

**Recent Sales in Neighborhood**          Previous Parcel       Next Parcel        Return to Main Search Page         Forsyth Home
**Recent Sales in Area**

## Owner and Parcel Information

| | | | |
|---|---|---|---|
| Owner Name | BENNETT COBREY SR & BENNETT MARYAM | Today's Date | May 30, 2012 |
| Mailing Address | 965 SUMMERFIELD DR | Parcel Number | C03 134 |
| | CUMMING, GA 30040 | Tax District | County (District # 0) |
| Location Address | 965 SUMMERFIELD DR | 2012 Millage Rate | 26.624 |
| Class Code (NOTE: Not Zoning Info) | R3 | Record Type | REAL |
| Subdivision Number | | Acres | 0.21 |
| Neighborhood # | 01549 | Homestead Exemption | S1 |
| Legal Description | 3-1 1247 LT76 UN2 SIENNA | Parcel Map | Show Parcel Map |

### 2012 Value Information          Show Historical Assessments          Show Assessment Notice

| Land Value | Improvement Value | Total Value | Assessed Value | Tax Information |
|---|---|---|---|---|
| $ 70,000 | $ 170,110 | $ 240,110 | $ 96,044 | click here |

### Land Information

| Type | Acres |
|---|---|
| 100 | |

### Improvement Information

| Year Built | Heated Sq Ft | # Stories | Exterior Walls | Basement | Garage | Photo |
|---|---|---|---|---|---|---|
| 2006 | 2442 | 2 | Masonite | 6 | | NA |
| **Heating Type** | **Bedrooms/Bathrooms** | **Tennis Court** | **Pool** | **Number Fire Pl** | **Sketch** | |
| Gas | 4/2.5 | | | NA | Sketch Building 1 | |

### Sale Information

| Sale Date | Price | Deed Book | Grantor | Grantee |
|---|---|---|---|---|
| 11-28-2006 | $ 377,730 | 4542-608 | O'DWYER HOMES INC | BENNETT COBREY SR & |
| 02-01-2006 | $ 104,400 | 04167-0265 | | |

**Recent Sales in Area**          Previous Parcel       Next Parcel        Return to Main Search Page         Forsyth Home

The Forsyth County Tax Assessor's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. Website Updated: May 28, 2012

© 2007 by the Forsyth County Tax Assessor's Office | Website design by qpublic.net

31/05/2012

Forsyth County

# 2011 Property Tax Statement

Matthew C. Ledbetter
Forsyth County Tax Commissioner
1092 Tribble Gap Rd

Cumming , GA 30040-2236

| Bill No | Due Date | **TOTAL DUE** |
|---|---|---|
| 2011-105292 | 11/15/2011 | **$0.00** |

MAKE CHECK OR MONEY ORDER PAYABLE TO:
Forsyth County Tax Commissioner

Map: C03 134
Last payment made on: 10/26/2011
Today's date: 5/31/2012
Location: 965 SUMMERFIELD DR
INTEREST, PENALTIES, AND OTHER FEES WILL APPLY AFTER DUE DATE.

BENNETT COBREY SR & BENNETT MARYAM
965 SUMMERFIELD DR

CUMMING , GA 30040

If taxes are paid by your mortgage company, send them the top portion of your statement only.

**Matthew C. Ledbetter**
**Forsyth County Tax Commissioner**
**1092 Tribble Gap Rd**
**Cumming , GA 30040-2236**

**Phone: (770) 781-2110  Fax:  (678) 455-1207**

| | |
|---|---|
| Tax Payer: | **BENNETT COBREY SR & BENNETT MARYAM** |
| Map Code: | **C03 134** |
| Description: | **3-1 1247 LT76 UN2 SIENNA** |
| Location: | **965 SUMMERFIELD DR** |
| Bill No: | **2011-105292** |
| District: | **001 FORSYTH COUNTY AT LARGE** |

| Building Value | Land Value | Acres | Fair Market Value | Due Date | Exemptions |
|---|---|---|---|---|---|
| $171,930.00 | $50,000.00 | 0.2100 | $221,930.00 | 11/15/2011 | |

| Entity | Adjusted FMV | Net Assessment | Exemptions | Taxable Value | Millage Rate | Gross Tax | Credit | Net Tax |
|---|---|---|---|---|---|---|---|---|
| STATE TAX | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 0.2500 | $22.19 | $0.00 | $22.19 |
| COUNTY M&O | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 7.6550 | $679.55 | $0.00 | $427.17 |
| SALES TAX CREDIT | | | $0.00 | $88,772.00 | -2.8430 | $0.00 | -$252.38 | $0.00 |
| COUNTY BOND | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 0.8690 | $77.14 | $0.00 | $77.14 |
| SCHOOL M&O | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 16.3000 | $1,446.98 | $0.00 | $1,446.98 |
| SCHOOL BOND | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 2.4180 | $214.65 | $0.00 | $214.65 |
| FIRE DISTRICT | $221,930.00 | $88,772.00 | $0.00 | $88,772.00 | 1.9750 | $175.32 | $0.00 | $175.32 |
| **Totals:** | | | | | 26.624 | $2,615.83 | -$252.38 | $2,363.45 |
| | | | | | | **Current Due** | | $2,363.45 |

31/05/2012                                  Forsyth County

|  | |
|---|---:|
| **Penalty** | $0.00 |
| **Interest** | $0.00 |
| **Other Fees** | $0.00 |
| **Previous Payments** | $2,363.45 |
| **Back Taxes** | $0.00 |
| **Total Due** | $0.00 |

If Back Taxes Are Due Please Call for correct amount due as interest continues to accrue!

*Secured by* ⋂
(i)thawte
2012-05-31

**INVOICE**

Efficax Global Solutions
130 Edgehill Bala
Cynwyd, PA 19004
Ph# 484-257-7565
Fax: 610-672-9820

| Client Order No | –**T-88613** |
| --- | --- |
| Current Owner Search | -$ 45.00 |
| Additional Copies | -$ 15.00 |
| TOTAL | -$ 60.00 |

Thank you, for your Order.

Please make your payments to,

Efficax Global Solutions
130 Edgehill Bala
Cynwyd, PA 19004
Ph# 484-257-7565
Fax:610-672-9820

4/24/2015

Outlook.com Print Message

Print                                                                                                          Close

# (No Subject)

**From:** **Maryam Bennett** ███████████████
**Sent:** Tue 10/12/10 4:14 PM
**To:** Selene c███████████████

I have tried several times to try and work out the missed payments with Selene Finance. I have not heard anything back. We are trying to add the missed payments on to the back of the mortgage and be caught up so we won't have the problems we are willing to do what we can to work with you but we need you all to work with us as well. We want to keep our home and we got a call from a Realtor about a short sell when we thought that someone was working with us to come up with a plan to get back on track. We started off with this company by trying to start off on the right foot and making our payments on time only to have the check returned to us. I don't know what you want to do but I would love to hear something back. Thank you for your time.

Sincerely,

Maryam T Bennett

Mrs. Maryam T Bennett


**From:** **Maryam Bennett** ████████████████
**Sent:** Sun 10/03/10 9:00 PM
**To:** Selene c██████████████

I am writing in regards to the msg I received from Selene. Ok If Loan Resolution is working with us to keep our home why did I get a call from Keller reality asking me about a short sale because Selene requested that we do one. Not only did I say that we wanted to try and work with you on keeping our home but I went through all the trouble of filling out and returning the paper work. The info that you got from citimortgage is still conflicting. You said they canceled us from the modified program because we made to much money yet Selene is saying that we make to little to afford our house. The money that we made between sending for the modification was the same until recently when my husband got his raise so someone is not being straightforward. I don't know what is going on but we don't plan on selling or foreclosing on our home. So whatever the plan is it does not include the sell of or foreclosure of our home.

Mrs. Maryam T Bennett


**From:** **Customer Service Department** ██████████████████
**Sent:** Thu 9/23/10 6:13 PM
**To:** maryamthomas████████████████████
        1 attachment
        CitiMortgage History - Bennett.rtf (50.0 KB)

Dear Mr. and Mrs. Bennett:

Selene Finance would like to take this opportunity to thank you for your email concerning your account.

Our records indicate the Financial Worksheet and IRS Form 4506-T were received in our office on 9/15/2010 and forwarded to your Loan Resolution Consultant for processing and review. This information will be used to assess your financial situation and give you the best loan workout solution. Your Loan Resolution Consultant will contact you after the assessment is completed to further discuss your mortgage options.

On 9/16/10, we received an email from you stating that the amount due on your loan is incorrect along with receipts for payments made on your loan to CitiMortgage. The transactional history sent to you with our letter of 8/19/2010 shows all these payments received with the exception of your payment of $1802.57 which was returned to you by CitiMortgage on 6/24/2010. I am attaching an additional copy of your 2009 and 2010 history from CitiMortgage with these payments underscored. Your mortgage is severely delinquent and due for the 4/1/2009 payment, however our Loan Resolution Consultants are willing to review all options to assist you in bringing your mortgage to a current status.

If you have any additional questions, please contact our Loan Resolution Department toll free at 1-877-768-3759, Monday and Wednesday 8:00 am to 6:00 pm, Tuesday and Thursday 8:00 am to 9:00 pm, or Friday 8:00 am to 5:00 pm, CST.

Sincerely,
Selene Finance Customer Service

For more information about Selene Finance, please visit www.selenefinance.com.


This message is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Please notify the sender by reply and delete this message from your system. Thank you.

Selene Finance LP is a debt collector. Unless you are in bankruptcy or received a bankruptcy discharge of this debt, Selene Finance is attempting to collect a debt and any information obtained will be used for that purpose. If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.


From:  **maryamthomas** ▮▮▮▮▮▮▮▮▮▮
Sent:  Fri 9/10/10 1:56 PM
To:    Selene c ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Forgot to add that all the dates that shows as Selene sending me the financial package just so happen to be the days I call/and or email to notify Selene that I had yet to receive said package. I have the times I have tried to contact Selene to get the package documented just for cases like this. I have been trying to solve the issues that are said to be ours. I am showing my willingness to work with this company so if nothing is resolved it stands to say

that is not because of our doing.

Sincerely,

Mrs. Maryam T Bennett

From: **Maryam Bennett** █████████████████████
Sent: Fri 9/10/10 1:37 PM
To: Selene c ████████████████████

If you were to refer to all of the other emails that I have sent you will see that I have not received any of the paperwork until September 3rd and the one I received it was out dated and I have more than just the link to prove that Citimortagate is not being honest in saying we haven't paid our mortgage since April of 09. I have bank statements and the cashed checks to prove them false. I will send in all of this info when I get the update financial package. The transactional history will be proven false when I send in the prior info I have stated. When it is I will expect the amount due to be adjusted or a refund for the amount that we paid that they are saying we didn't. Thank you for your time.

Sincerely,

Mrs. Maryam T Bennett

From: **Customer Service Department** ██████████████████████
Sent: Fri 9/10/10 1:28 PM
To: maryamthomas███████████████

Dear Mr. and Mrs. Bennett:

Selene Finance would like to take this opportunity to thank you for your email concerning your account.

We have reviewed your email however, the 'link' you referenced was not inclusive of your memorandum. Although you were denied by CitiMortgage for loan modification, our records indicate we mailed to you our Financial Package on 8/5/10, 8/18/10 and 9/2/10 outlining the requirements to review your loan for Modification with Selene Finance. However, as of this date, the information has not been returned. You were asked to provide this information in order for us to assess your financial situation and give you the best loan workout solution. You were also provided with the transactional history from CitiMortgage outlining the payments received and applied to your mortgage including the Trial Forbearance Plan period.

Your mortgage is due for the 4/1/09 payment and should you choose to do so, we look forward to receiving your financials to assist you with your mortgage account. We must tell you that there is no guarantee your loan will be modified, but we are attempting to assist you in your circumstances.

If you have any additional questions, please contact our Loan Resolution Department toll free at 1-877-768-3759, Monday and Wednesday 8:00 am to 6:00 pm, Tuesday and Thursday 8:00 am to 9:00 pm, or Friday 8:00 am to 5:00 pm, CST.

Sincerely,

Selene Finance Customer Service

For more information about Selene Finance, please visit www.selenefinance.com.

This message is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others. Please notify the sender by reply and delete this message from your system. Thank you.

Selene Finance LP is a debt collector. Unless you are in bankruptcy or received a bankruptcy discharge of this debt, Selene Finance is attempting to collect a debt and any information obtained will be used for that purpose. If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property

-----Original Message-----
From: maryamthomas
Sent: Friday, August 27, 2010 10:11 AM
To: Customer Service Department
Subject: Loan Documents

Created: Aug 27, 2010
Client Id: 575
Loan No:
Name: COBREY BENNETT SR
Property Address: 965 SUMMERFIELD DR
CUMMING GA 30040-0000
Work Phone:
Home Phone:
Best method to contact: Email address
Best time to contact: Afternoon

Comments: In this link I am sending it shows why Citimortgage sold our loan when I started asking questions about their practices. As I have said before we have the bank statements showing that we were making payments on our loan and they are showing we haven't it is untrue and we have proof and if Selene Finance does not try and help up get to the bottom of this after you have been warned of the situation we will have right to sue both citi and Selene. We are not the first people citi have done this too but I am not giving up without a fight. We will be contacting our lawyer soon. Also with the papers we received as an explanation from citi you can tell their claims have no basis. How can we stay on a program from 7/09 to 4/10 and they canceled it due to our income when Selene is trying to claim that we don't make enough to keep our home. Also the excuse they gave to why our debt was not forgiven as promised is what? They never really said. Wonder why? I do too.

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5402 (20100827) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Maryam Bennett aka Maryam Thomas aka | § | |
| Maryam Shabazz, and | § | **BANKRUPTCY** |
| Cobrey Bennett, | § | |
| Debtors | § | CASE NO. 08-23643-REB |
| | | |
| CitiMortgage, Inc., | § | |
| Movant | § | JUDGE ROBERT E. BRIZENDINE |
| v. | § | |
| Maryam Bennett aka Maryam Thomas aka | § | |
| Maryam Shabazz, and | § | |
| Cobrey Bennett, | § | **CHAPTER 7** |
| Debtors | § | |
| Betty A. Nappier, | § | |
| Trustee | § | |
| Respondents | § | |

## NOTICE OF ASSIGNMENT OF HEARING

NOTICE IS HEREBY GIVEN THAT a Motion for Relief From the Automatic Stay has been filed in the above-styled case. If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. **Movant consents to the automatic stay (and any related co-debtor stay) remaining in effect until the Court orders otherwise.**

**A hearing will be held on the 11th day of February, 2009, at 10:30 a.m. in Courtroom 103, United States Courthouse, 121 Spring Street, SE, Gainesville, GA.**

Within three days of the date of this notice, Movant's attorney, or a pro se Movant, shall serve the motion and this notice upon the debtor, trustee, and their attorneys or record, and shall file a certificate of service within three days of service. BLR 9007-2 NDGa.

DATED: January 22, 2009

/s_____
Richard B. Maner
Attorney for CitiMortgage, Inc.
GA Bar No. 486588
Richard B. Maner, P.C.
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA 30328
Phone: 404-252-6385; Fax: 404-252-6394
rmaner@rbmlegal.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Maryam Bennett aka Maryam Thomas aka | § | |
| Maryam Shabazz, and | § | BANKRUPTCY |
| Cobrey Bennett, | § | |
| Debtors | § | CASE NO. 08-23643-REB |
| | | |
| CitiMortgage, Inc., | § | |
| Movant | § | JUDGE ROBERT E. BRIZENDINE |
| v. | § | |
| Maryam Bennett aka Maryam Thomas aka | § | |
| Maryam Shabazz, and | § | |
| Cobrey Bennett, | § | CHAPTER 7 |
| Debtors | § | |
| Betty A. Nappier, | § | |
| Trustee | § | |
| Respondents | § | |

## MOTION FOR RELIEF FROM STAY

COMES NOW, CitiMortgage, Inc., (the "Movant") and moves this Court for relief from the automatic stay pursuant to 11 U.S.C. §362.  In support thereof, Movant shows the Court as follows:

1.

The Movant is the holder of a Deed to Secure Debt ("Security Deed") which describes certain real property purportedly owned by Debtor located at 965 Summerfield Dr., Cumming, GA 30040.  Said real property is security for a promissory note held by Movant.

2.

The Debtors filed this Chapter 7 case on December 10, 2008.

3.

The Debtors are contractually due for November 1, 2008 and are in arrears in excess of $6,534.44.

4.

The approximate total payoff is $306,758.56 as of the filing of this motion, as well as all other charges specified in the loan documents held by Movant and by applicable law.

5.

The Debtors' indicated market value is unknown as of the filing of this Motion.

6.

Because Debtors have demonstrated a continuing default and the clear inability to make payments required by the loan documents and the provisions of the bankruptcy code, Movant is not adequately protected.  For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirements of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature.

7.

Because the Security Deed provides that the Debtors are responsible for Movant's attorney's fees in pursuing legal action such as this, Movant is entitled to reasonable attorney's fees from the Debtor to be assessed against its secured property described located at 965 Summerfield Dr., Cumming, GA 30040, under 11 U.S.C. §506(b) (unless it is shown clearly that there is no equity in the security property.)

WHEREFORE, the Movant prays for an Order relieving it from the provisions of the bankruptcy stay and authorizing it to proceed with the exercise of its private power of sale and foreclosure under its Deed to Secure Debt, any dispossessory proceedings if necessary all in accordance with and pursuant to appropriate state statutes, for reasonable attorney's fees under 11 USC §506(b).

Respectfully submitted,
RICHARD B. MANER, P.C.

/s_____
Richard B. Maner
Attorney for CitiMortgage, Inc.
GA Bar No. 486588
Richard B. Maner, P.C.
5775 Glenridge Drive
Building D, Suite 100
Atlanta, GA 30328
Phone: 404-252-6385; Fax: 404-252-6394
rmaner@rbmlegal.com

Alliance Menu | My Transactions | Alliance Communications | Help

## Policy View

Agent ID: A045623              Agency: Laura Stephens                    Producer Name: SGAQHQ05

| Policy Number: | Display Policy as of: | |
| --- | --- | --- |

[ Search ]                                    [ View Customer Portfolio ]  [ Exit ]

**Rating State: GA**
Homeowners: ████████ 11/29
Prop APC
Deluxe Plus Homeowners Policy
Agent of Record: Laura Stephens (41 45823)
Review Premium Change & Savings

Recommendations

**COBREY G AND MARYAM
BENNETT**
Home ████████
Policy Term: 11/29/2013-
11/29/2014
Original Year: 2006
Number of Times Renewed: 7

**Status: ACTIVE**
Pay Plan: MONTHLY
Pay Method: DIRECT MAIL
Allstate eBill: Not Enrolled
Allstate ePolicy: Not Enrolled
Premium: $1,540.00
AAP: $1,540.00
Balance: $1,564.72
Last Bill Amount: $133.17
Current Amount Due: $28.22
Due Date: 10/29/2013

**Activity**

[ Select One ▾ ]                                    [ Continue ]

1  Policy View    2  Billing    3  Activity History    4  Claims

### Billing Details

| | | | | |
| --- | --- | --- | --- | --- |
| Status: | ACTIVE | Payor: | THIRD PARTY INSURED | |
| Reinstate Date: | 09/29/13 | Pay Plan: | MONTHLY | |
| Premium: | $1,540.00 | Pay Method: | DIRECT MAIL | Request to Enroll in Easy Pay |
| AAP: | $1,540.00 | Allstate eBill: | Not Enrolled | |
| Prior Term Balance: | $24.72 | | | |
| Renewal Cycle: | NOT IN CYCLE | | | |
| Billing Status: | Normal | | | |
| Next Scheduled Activity: | ISO PRE-RENEWAL EVALUATION | | | |
| On: | 08/01/14 | | | |

| **Current Activity Status** | | **Last Activity** | | **Next Scheduled Activity** | |
| --- | --- | --- | --- | --- | --- |
| Balance: | $1,564.72 | Action: | REGULAR View Billing Document | Action: | CANCELLATN |
| Amount Due: | $28.22 | Issued Date: | | Issue Date: | 11/08/13 |
| Due Date: | 10/29/13 | Amount: | $133.17 | Amount: | $156.59 |
| Take Payment: | | | | Next %: | 8.33 |

Cash/Check/Money Order

Credit/Debit/Electronic Check

### Transaction History

| Posted Date | Transactions | Source | Amount | Balance |
| --- | --- | --- | --- | --- |
| 10/14/2013 | Renewal premium | | $1,540.00+ | $1,564.72+ |
| 10/11/2013 | Cancel-rewrite balance transfer | | $5.05+ | $24.72+ |
| 10/10/2013 | Policy change | | $110.00 - | $19.67+ |
| 10/09/2013 | Regular Bill | Mail | $133.17+ | |
| 09/30/2013 | Installment fee charge | | $3.50+ | $129.67+ |
| 09/30/2013 | Payment received - credit card | | $266.33 - | $126.17+ |

Reverse Installment Fee    [ Retrieve More Postings ]

### Billing Activity History

| Date | Description |
| --- | --- |
| 09/30/2013 | PTN EMAIL EVENT 3000 TYPE 0217 ON 2013-09-30 |
| 09/30/2013 | POLICY REINSTATED ON 2013-09-29 DUE TO CASH INPUT. REINSTATED ON 2013-09-30 WITHOUT A LAPSE. DUE TO NO LAPSE, REINSTATEMENT NOTICE NOT SENT TO INSURED. PAYMENT EFFECTIVE 2013-09-30. |
| 09/30/2013 | DPN TRANSACTION POSTED FROM: 007; ORIGINAL PROCESS DATE: 130930; ORIGINAL SOURCE CODE: J ; ORIGINAL BATCH: C745; MMC CODE/AGENT RECON KEY: 0 0 . |
| 09/07/2013 | INSTALMENT FEE CHARGE $ 3.50 |
| 06/05/2013 | MORTGAGEE INFORMATION CHANGED |
| 04/18/2013 | POLICY CHANGED FROM MORTGAGEE TO INSURED PAYS |

[ Retrieve More Billing Activity History ]

[ << Back to Policy View ]  [ Continue to Activity History >> ]

## Policy View

Agent ID: A045823                      Agency: Laura Stephens                         Producer Name: SGAQHQ05

Policy Number: [ ]    Display Policy as of: [ ]    [Search]        [View Customer Portfolio]   [Exit]

Rating State: **GA**
**Homeowners:** [redacted]
Prop APC
Deluxe Plus Homeowners Policy
Agent of Record: Laura Stephens (41 45823)
Review Premium Change & Savings

Recommendations

**COBREY G AND MARYAM BENNETT**
Home: [redacted]
Policy Term: 11/29/2013-11/29/2014
Original Year: 2006
Number of Times Renewed: 7

Status: **ACTIVE**
Pay Plan: MONTHLY
Pay Method: DIRECT MAIL
Allstate eBill: Not Enrolled
Allstate ePolicy: Not Enrolled
Premium: $1,540.00
AAP: $1,540.00
Balance: $1,564.72
Last Bill Amount: $133.17
Current Amount Due: $28.22
Due Date: 10/29/2013

**Activity**

Select One  [▼]          [Continue]

1 [Policy View]   2 Billing   3 [Activity Inbox]   4 [Claims]
< Go Back to Billing Details

### Transaction History

Displaying Page 1 of 2 << | 1 2 | >>

| Posted Date | Transactions | Source | Amount | Balance |
|---|---|---|---|---|
| 10/14/2013 | Renewal premium | | $1,540.00+ | $1,564.72+ |
| 10/11/2013 | Cancel-rewrite balance transfer | | $5.05+ | $24.72+ |
| 10/10/2013 | Policy change | | $110.00 - | $19.67+ |
| 10/09/2013 | Regular Bill | Mail | $133.17+ | |
| 09/30/2013 | Installment fee charge | | $3.50+ | $129.67+ |
| 09/30/2013 | Payment received - credit card | | $266.33 - | $126.17+ |
| 09/09/2013 | Cancellation Notice | Mail | $266.33+ | |
| 09/07/2013 | Installment fee charge | | $3.50+ | $392.50+ |
| 08/08/2013 | Regular Bill | Mail | $133.16+ | |
| 07/09/2013 | Regular Bill | Electronic copy only - not mailed | $0.00+ | |
| 06/08/2013 | Regular Bill | Electronic copy only - not mailed | $0.00+ | |
| 05/08/2013 | Recalculated Bill | Electronic copy only - not mailed | $0.00+ | |
| 04/16/2013 | Third Party Endorsement Bill | Mail | $389.00+ | |
| 02/16/2013 | Third Party Endorsement Bill | Mail | $389.00+ | |
| 02/11/2013 | Policy change | | $389.00+ | $389.00+ |
| 12/04/2012 | Payment received - mortgage company | Mortgagee disbursement | $1,542.00 - | $0.00+ |
| 11/17/2012 | Third Party Renewal Bill | Mail | $1,542.00+ | |
| 10/16/2012 | Third Party Renewal Bill | Mail | $1,542.00+ | |
| 10/15/2012 | Renewal premium | | $1,542.00+ | $1,542.00+ |
| 11/22/2011 | Payment received - mortgage company | Mortgagee disbursement | $1,215.00 - | $0.00+ |
| 10/15/2011 | Third Party Renewal Bill | Mail | $1,215.00+ | |
| 10/13/2011 | Renewal premium | | $1,215.00+ | |
| 11/16/2010 | Payment received - mortgage company | Mortgagee disbursement | $834.00 - | |
| 10/16/2010 | Third Party Renewal Bill | Mail | $834.00+ | |
| 10/13/2010 | Renewal premium | | $834.00+ | |
| 11/16/2009 | Payment received - mortgage company | Mortgagee disbursement | $709.00 - | |
| 11/09/2009 | Renewal Bill | Mail | $62.62+ | |
| 10/14/2009 | Renewal premium | | $709.00+ | |

Displaying Page 1 of 2 << | 1 2 | >>

< Go Back to Billing Details

We sent our notice of want to rescind/void our loan on August 9, 2013, to Ocwen did not comply with TILA section 1635 (b), nor did they file a timely dispute, and have since lost their right to do so, both under TILA and Res Judicata, because they did not raise the issue in the federal case number: 2:13-cv-243 when they could have and should have, due to preclusionary claims.   If the Creditor disputes, the rescission, it then becomes their responsibility to take the proper steps to do so and file a declaratory claim, not the borrower.

The 11th Circuit has long held, that rescission is rendered upon notification by consumers. In January of this year the Supreme Court agreed with the 11th circuit in a unanimous vote in Jesinoski v Countywide.

If the Lender disputed the validity of our rescission claim, it then became, their responsibility to have the Court intercede and they did not, and due to Res Judicata, expropriation of the statute of limitations, and claim preclusion, because this issued should have been raised in the federal court by Ocwen and they did not, and can no longer do so.

The Defense, tried to remove our cause 14CV-0891-02 which is pending in Superior Court, to federal court to address the TILA angel, when the federal court lacks subject matter jurisdiction, because they can not handle actions to quiet titles. Also, because the remedies, we are seeking are equitable and restitutionary in nature, and the amount in dispute is less than $75,000 this cause must be heard in State Court. Also, the Federal

Court told us if we brought another issue before them, regarding our home they would sanctions us.

We in good faith, tried to give them another chance to do the right thing, and they still did not. When we issued the second good faith attempt, the time to dispute it had long since passed. The first notice was sent August 9, 2013 & the second good faith attempt was made on July 1, 2015. The second good faith attempt did not give them a chance to revisit the issue, but to give them another chance to rectify the situation, which they did not do. The loan was rescinded in August of 2013, so the second attempt was for their benefit not ours.

<h2 style="text-align:center">PURPOSE OF THE TRUTH-IN-LENDING ACT (TILA)</h2>

TILA seeks to assure meaningful disclosure of credit terms and conditions that the consumer will be informed with accurate costs and benefits of their credit transaction, allowing them to shop for the best credit terms available on the market. 15 U.S.C. § 1601(a). When we pointed out the fact that the new loan was more expensive than our old loan, they lowered payment to get us to keep us from canceling, long enough to make us think, we were getting the best deal possible and miss the rescission date. Had we known the truth, we would not have taken the loan.

When the creditor changed the payment without giving us anything to tell us how this would effect our loan terms, future payments, etc. They violated TILA, and this violation is a material one, which extended our right to a rescission for 3 years. We

rescinded 9 months after the refi.

## STANDARD OF LAW

Since TILA specifically remedial in nature, its provisions must be strictly construed. A creditor must comply with TILA in all credit transactions and "misleading disclosure is as much a violation of TILA as a failure to disclose at all." Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980). It is not sufficient to attempt to comply with the Act, but rather, creditors are required to strictly comply with all the requirements of the Act. There is no need to show that the consumer was misled or deceived by ambiguous credit terms in order to prevail. Noel v. Fleet Finance, Inc., 971 F. Supp. 1102 (E.D. Mich. 1997).

Congress did not intend for creditors to escape liability for merely technical violations, that even minor or technical violations impose liability upon the creditors. Huff v. Steward-Gwinn Furniture Co., 713 F.2d 67, 69 (4th Cir. 1983). See also, Washington v. AmeriquestMortg. Co., 2006 W.L. 1980201 (N.D. Ill.).

Assignee's Liability: An assignee is liable for statutory damages for violations by failure to disclosure TILA requirements by its predecessors and its own violation if it fails to respond properly to a rescission notice. Palmer v. Champion Mortg., 465 F.3d 24, 27 (1st Cir. 2006)

## SCOPE OF TILA

TILA's scope, was specifically enacted to ensure accurate and meaningful disclosure

3

of the charges involved in a transaction, allowing consumers to make their own decisions about obtaining a loan.

When the consumer has an extended right to rescind or pursue other statutory remedies because a violation occurs, the statute of limitations for all the damages the consumers seek extends to three years from the date the violation is revealed. McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003).

Unclear Disclosures, where the Truth-In-Lending Disclosure Statement shows a contradiction between TILA disclosures (See) Ralls v. Bank of N.Y., 230 B.R. 508, 516 (E.D. Pa. 1999) (where there is a contradiction between TILA disclosures and other information provided by the lender, the disclosures are unclear).

Failure to disclose time of payment in the disclosure statement violates TILA because "the timing of payments […] must be grouped with the other required disclosure" such as number of payments and amount of payments. Jones v. Ameriquest Mort. Co., 2006 WL 273545 (N.D. Ill.). See Andrews v. Chevy Chase Bank, 240 F.R.D at 617 (the creditor listed the period of payments in a different place than the number and amount of payments violate TILA requires to group related information together).

Payment Schedule: Payment schedule includes the number of payments, the amount of each payment, and the timing of payments scheduled to repay the obligation. U.S.C. § 1638(5)-(6); Reg. Z. § 226.18(g).

Violation of these requirements entitles the consumer statutory damages, attorney's fees, and actual damages. U.S.C. § 1640(a)(3) Improper disclosure is also a material violation for purposes of rescission. U.S.C. § 1602(u); U.S.C. § 1602(u); Reg. Z. § 226.23 n 48.

If the creditor fails to deliver the required notice of material disclosures, the consumer's right to rescind is automatically extended from three business days to three years. Reg.Z. § 226.23(a)(3).

Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir. 2000) shows that the consumer's reliance was detrimental is established when the plaintiff shows that she read and understood the disclosures and that if the disclosures have been accurate, she would have sought and obtained a lower loan).

BABC's website confirms our argument is correct and is contrary to the one they gave in their brief.

Taken from BABC's publication. "Any mortgage servicer receiving a written notice of rescission will now be forced to respond within twenty days and litigate the matter in court to prove compliance with TILA disclosure requirements." See (second sentence under impact on business operations.)

Also from BABC's publication, "Eleventh Circuit Courts of Appeals hold that borrowers have satisfied the notification requirement if they inform the lender in writing of their desire and intent to rescind the transaction within the three-year time frame." See

5

(second sentence of the second paragraph captioned Background of Notice versus Lawsuit Issue).

This case was tried in the 11th Circuit, and their stance before the ruling was a borrower only needs to send want of void/rescission. The TILA Rescission sent on July 1, 2015, and was only another in a long line of good faith attempts from the Plaintiffs. By the time we tried to give them a second chance to comply, their right to dispute had long expired.

According to our Federal Truth in Lending Disclosure Statement, provided to the CFPB by Ocwen, our monthly payment should have been $ 2013.31, which is not inline with payment statements from Ocwen, which claimed our monthly payment was $1735.46. This is a Material Violation of TILA and is the cause of our right to the extended 3 year rescission period.

There was no paperwork to show how or why this change occurred, how long it would last, nor how it would affect the agreed to loan terms since the difference in payment is $277.85 (which just so happens to be the amount Carol the underwriter claimed were for our HUD insurance premium) which could have had substantial differences if accounted for. There were no corrected disclosures accounting for the change. Nor was there one, when we sent notification of rescission, which means our rescission is valid.

Jesinoski filed notice of rescission exactly 3 years of the closing of their loan due to

material TILA violations. Material violations that are grounds for damages include, but are not limited to, improper disclosure of amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and security interest disclosures. Under TILA, a creditor is considered strictly liable for any violations. This means money damages are imposed for the violations, regardless of the creditor's intent. Incorrect disclosures are also grounds to rescind a loan and extend the 3 days right of rescission to a 3 years right of rescission.

Had Ocwen, had done more than send us a denial of our rescission, or started the process of unwinding our loan, upon receipt of our Notice of Rescission, Ocwen would have to give back our closing costs and finance charges, while we would've had to return the present balance of the mortgage.

However, since Ocwen did not do this, and filed a motion for Declaratory Judgment well after TILA allows, not only are the Note & Mortgage null, the debt itself is also.

# EXHIBIT
## BABC's interpenetration of
## Jesinowski v Countrywide

# BRADLEY ARANT
# BOULT CUMMINGS LLP

Publications

(See) http://m.babc.com/no-lawsuit-required-to-rescind-us-supreme-court-clarifies-mortgage-rescission-notification-requirements-for-borrowers-under-tila-01-20-2015/

No Lawsuit Required to Rescind: *U.S. Supreme Court Clarifies Mortgage Rescission Notification Requirements for Borrowers under TILA*
1/20/2015
This proves that our (the Plaintiffs')  interpretation of TILA 1635 (a) was correct, as this link and copy of a publication found on BABC's website, that their interpretation of the the law regarding Jesinoski v Countrywide is the same as our.

Related Attorneys:

Marc James Ayers, Bethany Corbin, Elena A. Lovoy
**Background of Notice versus Lawsuit Issue**

   The Truth in Lending Act ("TILA"), as implemented by Regulation Z, provides borrowers with a powerful tool: the right to rescind certain mortgage loan transactions. This rescission may occur under two circumstances. First, borrowers have an unqualified right of rescission until midnight of the third business day following consummation of the transaction if the creditor complied with the TILA disclosure requirements. If a creditor fails to provide the required rescission notice or material disclosures, the right of rescission extends for three years after the consummation of the transaction or upon transfer or sale of the property, whichever occurs first.

9

Borrowers may elect to rescind their loan at any point during these time frames, as applicable, "by notifying the creditor...of his intention to do so." The term "notify" is not defined under TILA or Regulation Z.

Over the past several years, the United States Courts of Appeals, as well the 11th District federal district courts, have offered interpretations of this notification requirement. The Eleventh Circuit Courts of Appeals hold that borrowers have satisfied the notification requirement if they inform the lender in writing of their desire and intent to rescind the transaction within the three-year time frame. So in even without the Supreme Court's Ruling, our rescission stands

**No Lawsuit Required**

On January 13, 2015, the United States Supreme Court resolved this long-standing circuit split and clarified the necessary actions borrowers must take to assert their rescission rights. In *Jesinoski v. Countrywide Home Loans, Inc.*, the petitioners, Larry and Cheryle Jesinoski, refinanced the mortgage loan on their home in Minnesota by borrowing $611,000 from Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender, a predecessor-in-interest of Bank of America, N.A. ("Bank of America") on February 23, 2007. The Jesinoskis did not exercise their three-day right to rescind at that time and received their loan funds. Exactly three years later to the date of consummation (February 23, 2010), the Jesinoskis mailed a written notification purporting to rescind the transaction to "all known parties in interest," including Bank of America.

10

The Jesinoskis alleged that they received an insufficient number of copies of the TILA notice and disclosure, and thus, had a right to rescind the loan. Bank of America replied on March 12, 2010, denying that borrowers were entitled to rescission. Rather, Bank of America asserted that the Jesinoskis signed the TILA disclosure and Notice of Right to Cancel at the loan closing, and acknowledged the "receipt of two copies of *NOTICE OF RIGHT TO CANCEL* and one copy of the Federal Truth in Lending Disclosure Statement."

Bank of America claimed that because the parties disputed the adequacy of the disclosures and thus, the continued availability of the right to rescind, written notice alone was insufficient. The Jesinoskis then filed a lawsuit in federal court on February 24, 2011, four years after their loan transaction. The district court granted judgment on the pleadings in favor of Bank of America, holding that TILA requires a borrower to file a lawsuit within three years of the credit transaction's consummation. The Eighth Circuit Court of Appeals affirmed, further explaining that the written notification sent by the Jesinoskis did not preserve their right to rescind.

In reversing these judgments and resolving the circuit split, the Supreme Court relied on the statutory language of TILA, which states that consumers must "notify" the creditor of their intention to rescind. According to the Court, this language "leaves no doubt" that rescission is effected when borrowers provide any written notification to the creditor of their intent to rescind. The statute does not expressly require that a lawsuit

11

also be initiated within the three-year time frame. Because the Jesinoskis mailed Bank of America a written notice of their intent to rescind within the statutorily prescribed time period, their rescission rights under TILA were properly exercised and preserved. This was the position advocated by the Consumer Financial Protection Bureau, AARP, National Consumer Law Center, American Civil Liberties Union, National Association of Consumer Advocates, and Center for Responsible Lending as amici curiae. The counter-position was argued in amici briefs by American Bankers Association, American Financial Services Association, Consumer Bankers Association, Consumer Mortgage Coalition, Independent Community Bankers of America, Mortgage Bankers Association, and Structured Finance Industry Group, Inc.

**Impact on Business Operations**

The relaxation of TILA's notification provision may produce unintended consequences for the banking industry. Mortgage servicers and others should review and revise their existing rescission procedures to ensure that they comply with this newly relaxed notification requirement. Any mortgage servicer receiving a written notice of rescission will now be forced to respond within twenty days and litigate the matter in court to prove compliance with TILA disclosure requirements. Additionally, the written notice standard currently does not include an express or textual prohibition against frivolous lawsuits, and lending institutions may see an influx of meritless rescission claims by borrowers motivated to avoid foreclosure in response to nonpayment. While

this decision does not relieve borrowers of their contractual obligation to pay their mortgage or otherwise return the funds, it nonetheless forces mortgage servicers to litigate any written claims of rescission. The Supreme Court's decision, however, left unresolved the time frame in which a borrower must file a lawsuit following the written notice of rescission. Thus, the threat of litigation could hang over servicers for years.